ROCCO L. AUFIERO & others *vs.* MARION H. AUFIERO (and a companion case[1]).

Norfolk.     October 6, 1954. — January 10, 1955.

Present: QUA, C.J., LUMMUS, WILKINS, WILLIAMS, & COUNIHAN, JJ.

*Minor.    Divorce,* Custody of child, Foreign divorce.    *Probate Court,* Custody of child.    *Domicil.    Residence.    Parent and Child.    Words,* "Residence."

By reason of a wife's appearance in a divorce proceeding brought in Nevada by her husband, who was domiciled in New York when he went to Nevada for that purpose, a divorce obtained by him in such proceeding must be recognized as valid by Massachusetts courts even if in truth he never acquired a domicil in Nevada.   [152]

A domicil in New York of a child of divorced parents in the custody of her grandparents, who also were domiciled there, as was her father, could not be changed by her mother by bringing her to and keeping her in Massachusetts.   [152]

A young child of divorced parents living at the Massachusetts home of her mother, who had brought her here from New York and had kept her here, commencing a proceeding under G. L. (Ter. Ed.) c. 208, § 29, to obtain custody of her, might properly be found to be a resident in Massachusetts within that statute although she was not domiciled here and her mother's conduct in keeping her here was contrary to the divorce decree and to a stipulation entered into by her mother in a proceeding in New York.   [153]

A judge of probate was justified in the circumstances in finding that the welfare of a young girl, the child of divorced parents, whose father in New York City had remarried, would be better served by leaving her where she was, residing with her mother and her mother's parents in

---

[1] The companion case is a petition by the respondent in the first case against the petitioners in that case.

a suitable home and neighborhood in Quincy, Massachusetts, to which she had successfully adjusted herself, rather than by returning her to New York City, her former home, to be brought up by her father's parents in an apartment in a large apartment house; and a decree awarding custody of her to her mother under G. L. (Ter. Ed.) c. 208, § 29, was affirmed. [154]

Two petitions, filed in the Probate Court for the county of Norfolk on October 24, 1952, and October 28, 1952, respectively.

The cases were heard by *Hickey*, J.

*Alfred Sigel*, (*David M. Brackman* with him,) for Rocco L. Aufiero and others.

*Wells G. Ruggles*, (*Samuel Pitchel* with him,) for Marion H. Aufiero.

Qua, C.J.   We have before us on appeals from decrees of the Probate Court for the county of Norfolk two petitions, both of which relate to the custody of Ethel Annette Aufiero, the minor daughter of Rocco L. Aufiero and his former wife Marion.   The first petition is brought by Rocco and his father, Lorenzo Aufiero, and his mother, Antoinette Aufiero, all of the county of Bronx in the State of New York, against Marion Aufiero described as of Quincy in our county of Norfolk.   This first petition has been called a petition for habeas corpus.   The prayer, however, is for a citation and not for the writ, and so far as appears no writ was issued and no proceeding in which the custody of the child was drawn in question was pending when the petition was filed.   We are of opinion therefore that this first petition must be treated as brought under G. L. (Ter. Ed.) c. 248, §§ 35–40, and not under c. 208, § 32. The second petition is brought by Marion against Rocco, Lorenzo, and Antoinette under G. L. (Ter. Ed.) c. 208, § 29, for temporary and permanent custody of the child.   The trial judge dismissed the petition of Rocco, Lorenzo, and Antoinette and entered a decree for permanent custody in favor of Marion.   We required a transcript of the evidence to be delivered to us in accordance with Rule 2 (G) of the Rules for the Regulation of Practice before the Full Court

(1952), 328 Mass. 695, and we now treat the cases as before us on the evidence and the findings of the judge.

The underlying facts are these: Ethel was born in New York on March 15, 1946. At that time Rocco and Marion were both domiciled in New York and were living there with Rocco's parents, Lorenzo and Antoinette. All four Aufieros continued to live together in New York, and the child Ethel lived with them, until March 19, 1949. On that day Marion left her husband and returned to the home of her parents in Quincy. She left Ethel, then three years of age, with her grandparents in New York and thereafter saw her only occasionally. In our view of the case the reasons for the separation are not material. This state of affairs continued for about three years until March or April, 1952, when Rocco went to Nevada for the purpose of obtaining a divorce. Marion learned of this when she visited New York in April of that year. At that time Rocco's New York attorney persuaded Marion to sign a waiver of her right to contest the libel in Nevada and a power of attorney authorizing a Nevada attorney to appear for her in the Nevada proceedings, and he did so appear. On May 16, 1952, the Nevada court awarded a divorce to Rocco, with custody of Ethel to Rocco's parents, Lorenzo and Antoinette. As so often occurs where persons have obtained these Nevada divorces, Rocco had no intention of remaining there and returned to live in New York immediately after the divorce. He remarried in July of the same year. In that same month Marion brought in the Supreme Court of New York for the county of Bronx a petition for habeas corpus to secure possession of Ethel. On the day set for hearing, the case was continued until September 12, 1952, and a stipulation was signed by Marion and by Rocco's attorney and made part of the record of the proceedings in the New York court to the effect that Marion might take the child to Massachusetts for three weeks until September 12. When the three weeks expired she did not return the child but kept her in this Commonwealth in violation of the stipulation entered into in New York and contrary to the terms of the

custody decree in Nevada. Shortly after coming into this Commonwealth with the child, Marion brought proceedings here to obtain custody, and Rocco, Lorenzo, and Antoinette brought their so called petition for habeas corpus here. Marion's petition in New York was dismissed, but whether on the merits or not the record does not enable us to say.

The judge found that the child Ethel was a resident of Norfolk County; that she had made a happy adjustment to her new home; and that her happiness and welfare would be best served by giving her care and custody to her mother.

Inasmuch as Marion appeared by attorney in the Nevada divorce proceedings, we are forced to hold that the divorce there obtained by Rocco is valid, even though in truth Rocco had no domicil in Nevada. *Sherrer* v. *Sherrer*, 334 U. S. 343. *Coe* v. *Coe*, 334 U. S. 378. For present purposes only we assume that that part of the Nevada decree which gave custody of the child to Rocco's father and mother was also valid when rendered, since both parents of the child were represented there. Compare *May* v. *Anderson*, 345 U. S. 528. But see *Halvey* v. *Halvey*, 330 U. S. 610, 615–616; Restatement: Conflict of Laws, § 146, comment c. There was some evidence that Marion may not have been fully informed as to the effect in Nevada of the papers she signed; but there is no finding that she was the victim of actual fraud, and we would not feel justified in making such a finding ourselves on the evidence.

In order to maintain her petition under G. L. (Ter. Ed.) c. 208, § 29, the wife must show that the child was either domiciled in or a resident of this Commonwealth when her petition was filed. Such is the language of that section itself, and the decisions upon it are to that effect. *Glass* v. *Glass*, 260 Mass. 562, 565. *Bergeron* v. *Bergeron*, 287 Mass. 524, 527. *Durfee* v. *Durfee*, 293 Mass. 472, 478. It is plain that the child had no domicil in this Commonwealth. When her mother brought her here the child and her father and those who had custody of her were all residents of and domiciled in New York. Marion, who did not have custody of the child, had no power to change the child's domicil. *Conley*

v. *Conley,* 324 Mass. 530, 534. *State Tax Commission* v. *Felt,* 331 Mass. 63. We think, however, that it could be found that the child was a resident here. The essentials for residence are difficult to state and have not been fully defined. In *Marlborough* v. *Lynn,* 275 Mass. 394, 397, it was said, "Residence imports something of expected permanence in way of personal presence. It signifies intended continuance as distinguished from speedy change." In *Cambridge* v. *West Springfield,* 303 Mass. 63, 66–67, we said, "The term 'residence' appearing in our statutes has been construed as one of flexible meaning, depending upon the phraseology of the particular statute, the relation of the term to the remaining words employed, and the aim and object intended to be accomplished by the Legislature." It may be that little or no weight can be attached to the intention of a six year old child, but it is fairly plain that the object of the Legislature in inserting the word "residents" was to confer upon the court necessary authority to deal with the custody of minors whose presence here had a sufficient aspect of permanence to give this Commonwealth a legitimate interest in their protection and welfare. Ethel was not merely a traveller passing through our territory. Her position was different from that of the usual temporary visitor. She was actually living at the home of her mother in a relationship which those in actual control of her intended to make permanent if they could. Ethel was not chargeable with the misconduct of her mother in failing to return her to New York and ought not to be compelled to suffer for it. Her welfare is the paramount consideration. *Hersey* v. *Hersey,* 271 Mass. 545, 555. *Helton* v. *Crawley,* 241 Iowa, 296 (this case, decided in 1950, contains an immense collection of citations bearing on the point). *Sheehy* v. *Sheehy,* 88 N. H. 223. She was actually here in circumstances which could reasonably be found to give this Commonwealth an interest in her protection and in her future care. It is to be noted that all interested parties are present here in this litigation. The New York parties have answered generally to the merits of Marion's petition, notwithstanding their

statement that they appear specially.  *Buckley* v. *John,* 314 Mass. 719, 722.  They have also brought a petition of their own.  *Creed* v. *Keyes,* 318 Mass. 504, 507.  And the child is here.  See *Halvey* v. *Halvey,* 330 U. S. 610, 615; *Woodworth* v. *Spring,* 4 Allen, 321.

There has been a material change in the situation since the Nevada decree.  Rocco, the child's father, has married again and has an apartment other than that of his parents.  He has new interests, and may have another family.  How much attention he would pay to Ethel and how much she would see of him in New York are problematical.  His new wife is a stranger to Ethel.  Ethel now lives with her mother and her mother's parents in a modest, well kept house of five rooms in a neighborhood of small houses.  They occupy together a large bright bedroom with three windows.  Ethel has made a complete and happy adjustment to her new home.  Her health is good, and she is doing well in school.  If she were returned to New York she would be obliged to live in the city in an apartment or tenement located in a large building of many stories composed of similar apartments or tenements.  We think that the judge was well justified in finding that Ethel's happiness and welfare will be better served if she is brought up by her own mother in the existing conditions in Quincy than if she is compelled to return to New York to be reared by her father's parents.

In each case the entry will be

*Decree affirmed.*