ELSA K. JONES *vs.* ABIGAIL S. JONES.

Plymouth.    February 4, 1965. — June 7, 1965.

Present: WILKINS, C.J., SPALDING, CUTTER, SPIEGEL, & REARDON, JJ.

*Minor. Parent and Child. Jurisdiction,* Custody of child, Foreign judgment. *Probate Court,* Modification of decree, Guardian ad litem, Jurisdiction. *Divorce,* Custody of child. *Evidence,* Report of guardian ad litem. *Residence. Constitutional Law,* Full faith and credit. *Res Judicata.*

Upon a petition to a Probate Court of Massachusetts for the custody of a child of tender years by her paternal grandmother following a valid decree by the District Court of the Virgin Islands granting the child's mother a divorce from the child's father and awarding custody of the child to the mother, a conclusion by the trial judge that the "happiness and welfare of . . . [the child] require that she be in the custody" of the grandmother, and the entry of a decree awarding custody accordingly, were justified by events and changes in circumstances subsequent to entry of the divorce decree, notably that the mother failed to avail herself of opportunities during her travels to see the child at the home of the child's paternal grandparents in Massachusetts, where the child went during the divorce proceedings and continued to reside, that the mother vacillated on the question of the child's custody and did not take the child permanently when she could have done so, and that no compelling reasons existed to uproot the child from her paternal grandparents' home, in which she was "happy and contented" and well cared for by them and by her father.    [263–264]

Reports with recommendations of a guardian ad litem of a minor appointed by a judge of a Probate Court and seasonably made available to counsel were properly admitted in evidence under G. L. c. 215, § 56A, at the hearing of a petition for custody of the minor; and the fact that the judge based his findings in part upon the reports did not result in an unlawful delegation of his duty.    [264–265]

Upon a petition for the custody of a minor child by her paternal grandmother, a Massachusetts Probate Court had jurisdiction under G. L. c. 208, § 29, in conjunction with § 28, to enter a decree awarding custody of the child to the petitioner following a valid foreign decree of divorce between the child's parents awarding custody of the child to her mother where the child was an inhabitant of or resident in Massachusetts at the time of the custody proceeding here.    [265]

A minor child who had lived in the home of her paternal grandparents in Massachusetts for several years following a foreign divorce of her parents was, on the facts, an inhabitant of or resident in Massachusetts

for the purposes of an award of her custody under G. L. c. 208, § 29. [265]

Under the law of the Virgin Islands, a decree of divorce by its District Court awarding custody of a minor child of the parties to her mother could have been modified there by reason of a change in circumstances since the entry of the decree, and where it appeared in a proceeding in a Massachusetts Probate Court for custody of the child, then a resident of Massachusetts in the home of her paternal grandparents, that due to a change in circumstances since the divorce the child's welfare necessitated an award of custody of her to her paternal grandmother, the Probate Court was not precluded from making such an award by the full faith and credit clause of the Federal Constitution or by the principle of res judicata. [266–267]

PETITION for custody of a minor child and petition for revocation of decree for temporary custody, filed in the Probate Court for the county of Plymouth on May 22, 1963, and May 16, 1963, respectively.

The cases were heard by *Stone*, J.

*Meyer H. Goldman* (*Morris M. Goldings* with him) for Abigail S. Jones.

*George L. Wainwright* for Elsa K. Jones.

SPALDING, J. This is an appeal by Abigail S. Jones (Abigail) from a decree of the Probate Court dated February 26, 1964, which awarded custody of her child, Wendolyn W. Jones (Wendolyn), to the child's paternal grandmother, Elsa K. Jones (Elsa). There is also an appeal by Abigail from the denial of her petition for revocation of a decree dated April 17, 1963, which placed Wendolyn in the temporary custody of Elsa. The judge, at Abigail's request, made a report of the material facts found by him; the evidence is reported.

On October 17, 1959, Abigail and E. Thomas Jones, Second (Thomas), were married in New Hampshire. Thereafter they went to California to live. Wendolyn was born there on April 23, 1960. The marriage relationship deteriorated rapidly with the result that a divorce was discussed. It was decided that Wendolyn and her mother should come to Massachusetts and visit with the paternal and maternal grandparents. On June 21, 1961, they came to the home of Abigail's parents in Milton.

Abigail decided that she would institute divorce proceedings in the Virgin Islands. Wendolyn was to remain with her paternal grandparents until after the divorce became final and her mother was settled. In November of 1961, when Abigail was in the Virgin Islands, a "Property Settlement Agreement" was executed which provided for the custody and maintenance of Wendolyn. The relevant provision reads: "The parties agree that the custody of the minor child of the parties shall remain with the Wife, subject to reasonable visitation rights of the Husband." Thomas also agreed to make support payments (a sum equal to one fifth of his gross income) so long as Wendolyn "is in possession of wife" and until Wendolyn "attains the age of eighteen (18) years, is emancipated, [or] is deceased."

A libel for divorce was filed by Abigail in the District Court of the Virgin Islands, Division of St. Thomas and St. John, in which she also sought the custody of Wendolyn. Thomas entered a general appearance and submitted to the jurisdiction of the court, but he did not contest the divorce. On December 18, 1961, the court, after a hearing, entered a decree absolute in Abigail's favor, which incorporated the terms of the "Property Settlement Agreement."

We assume that the court in the Virgin Islands had jurisdiction to decree the divorce and provide for the custody of Wendolyn. See *Chittick* v. *Chittick*, 332 Mass. 554; *Sherrer* v. *Sherrer*, 334 U. S. 343; *Coe* v. *Coe*, 334 U. S. 378. The question presented is whether a Massachusetts court has authority to change the effect of that decree, and if it has such authority, whether the decree of the court below should stand. That decree has been attacked on numerous grounds relating to jurisdiction, res judicata, full faith and credit, and rulings on evidence. Leaving the jurisdictional and constitutional issues for later discussion, we first consider whether on the merits Elsa should have custody of the child. We are of opinion that she should, but on the basis of more limited findings than those relied on by the probate judge.

Since the case is here on a report of the evidence, our

scope of review is quite broad. Our conclusions can rest on a narrower evidential foundation than that upon which the probate decree was grounded. "All the evidence is before us, and all questions of law, fact and discretion are open for our decision." *Lowell Bar Assn.* v. *Loeb,* 315 Mass. 176, 178. *Heard* v. *Heard,* 323 Mass. 357, 361. *Welker* v. *Welker,* 325 Mass. 738, 740.

In our view, events subsequent to the entry of the Virgin Islands decree, and the resulting change in circumstances, justify a decree changing custody. Facts found by the judge and by us are as follows: Abigail came to Massachusetts in December, 1961, shortly after the divorce hearing. At that time it was "agreed that Wendolyn would continue to stay with . . . Elsa . . . until Abigail . . . secured her final divorce papers and became . . . able to care properly for Wendolyn." Despite attempts by Thomas's and Abigail's parents to persuade her to remain here, she returned alone to the Virgin Islands four days before Christmas. Her father had offered to secure a house or apartment for her and both he and Thomas's parents had offered to help her. She preferred to leave because she enjoyed the life in the Virgin Islands and had made friends there while obtaining her divorce. On November 21, 1962, Abigail visited Brockton and spent a few days with Wendolyn, Elsa and her husband, Dr. Jones. At that time she was seeking employment as a model in New York and considered herself too unsettled to take Wendolyn with her. She, therefore, asked Elsa to keep Wendolyn for a longer period of time. Abigail left for New York on November 25 without leaving any address at which she could be reached. Although in New York at Christmas, she did not come to Brockton to spend it with Wendolyn.

While in Brockton Abigail had said she would not give up legal custody of Wendolyn, but on January 2, 1963, she informed Elsa that she had changed her mind. In March, after returning to the Islands, she sent a letter to Elsa in which she again said she intended to keep legal custody. Her plans at that time were to take Wendolyn for at least half a year and to go to Florida, San Francisco or Hawaii

the following year. Shortly thereafter Elsa filed the petition for temporary custody, and a decree granting her such custody was entered.

In May of 1963, Abigail left the Virgin Islands and went to live in Miami Beach, Florida, at the Windjammer Hotel where she was employed. She notified Elsa that she was prepared to take Wendolyn to Florida.

About this time Abigail filed a petition to revoke the decree for temporary custody, and Elsa filed the present petition for permanent custody. Concerning Abigail's ability at this time to care for Wendolyn, the judge found that Abigail was sharing an apartment with an unmarried woman who shortly before, while living with Abigail, had given birth to a child, and that Abigail's employment (cruise hostess) was such that she would be obliged to leave Wendolyn for "perhaps days and weeks." In August of 1963, she was in Brockton but she did not visit Wendolyn, although she was invited to do so. Again in November of 1963, while in Brockton, she failed to see her child.

Wendolyn at present is living in Brockton at the home of her paternal grandparents, Dr. and Elsa Jones. Dr. Jones has been a doctor of medicine for more than thirty years. They have a comfortable home, and a summer place on Cape Cod. Wendolyn is "happy and contented with her home and her surroundings." Wendolyn's father, Thomas, who works for an insurance company in Boston, spends his weekends at home with his daughter. Wendolyn loves her father and he is devoted to her. Dr. and Elsa Jones and Thomas have informed Abigail that she is welcome to visit Wendolyn at reasonable times. They have made no attempt to alienate the child's affections for her mother.

We concur in the conclusion of the judge that the "happiness and welfare of Wendolyn require that she be in the custody of . . . Elsa." "The governing principle by which the court must be guided in deciding the issues raised is the welfare of the child. That is so both as matter of law and as matter of humanity. Every public and private

consideration establishes this as the dominating rule.''
*Hersey* v. *Hersey,* 271 Mass. 545, 555. *Jenkins* v. *Jenkins,*
304 Mass. 248, 250. Abigail's failure to avail herself of
opportunities to see Wendolyn, her vacillation in deciding
to retain legal custody and her failure to take Wendolyn
permanently, convince us that Wendolyn should remain
with her grandmother in Brockton. There it is clear she
will be well cared for by her father and grandparents who
are deeply concerned for her welfare. The uprooting of a
child of tender years in these circumstances should be done
only for compelling reasons. Such reasons do not exist
here.

An objection has been raised to the admission in evidence
of two reports of the guardian ad litem appointed by the
judge under G. L. c. 215, § 56A. The use of such reports
is expressly provided for by statute. "Any judge of a
probate court may appoint a guardian ad litem to investi-
gate the facts . . . relating to . . . the care, custody or
maintenance of minor children . . . . Said guardian ad
litem shall . . . report in writing to the court the results
of the investigation, and such report shall be open to in-
spection to all the parties in such proceeding or their at-
torneys." Upon the filing of the reports, the judge made
them available to counsel in accordance with § 56A, and
ample opportunity was afforded the parties to meet this
evidence. They were thus properly admitted, and were en-
titled to such weight as the judge saw fit to give them.
*Jenkins* v. *Jenkins,* 304 Mass. 248, 252–253. Compare
*Boott Mills* v. *Board of Conciliation & Arbitration,* 311
Mass. 223, 227.

There is nothing in the contention that the statute is un-
constitutional because the report was hearsay. See *Com-
monwealth* v. *McGruder,* 348 Mass. 712. There is likewise
no merit in the argument that findings based in part upon
the report resulted in an unlawful delegation of the court's
duty. Nor is the fact that the report contained recommen-
dations of any consequence, for the court drew its own con-
clusion. From an examination of the careful and detailed
findings of the judge, we have no doubt whatsoever that the

judge considered that the responsibility of deciding the case was his and not that of the guardian. There were other exceptions taken to the admission of evidence, but they do not require discussion. Some of them have not been argued and those that were either are lacking in merit or are nonprejudicial.

It is argued, however, that the Probate Court was without jurisdiction to enter the custody decree. We disagree. General Laws (Ter. Ed.) c. 208, § 29, provides, "If, after a divorce has been decreed in another jurisdiction, minor children of the marriage are inhabitants of or residents in this commonwealth, the . . . probate court for the county in which said minors or any of them are inhabitants or residents, upon petition of either parent or of a next friend in behalf of the children, after notice to both parents, shall have the same power to make decrees relative to their care, custody, education and maintenance, and to revise and alter such decrees or make new decrees, as if the divorce had been decreed in this commonwealth." This section, in conjunction with G. L. (Ter. Ed.) c. 208, § 28, which expressly authorizes the revision and alteration of Massachusetts custody decrees "as the circumstances of the parents and the benefit of the children may require," gave the Probate Court jurisdiction. *Durfee* v. *Durfee,* 293 Mass. 472, 478–479. *Heard* v. *Heard,* 323 Mass. 357, 374. *Aufiero* v. *Aufiero,* 332 Mass. 149. See *Welker* v. *Welker,* 325 Mass. 738.

Abigail urges that Wendolyn's presence within the Commonwealth did not have that quality of permanence as would make her an inhabitant or resident under § 29. But the facts do not sustain this contention. From 1961 until the present, Wendolyn's home has been in Massachusetts in circumstances which give the Commonwealth an interest in her welfare. In no sense can she be considered a "temporary visitor" as that term was used in *Aufiero* v. *Aufiero, supra,* at 153. Since the court had jurisdiction under § 29 to enter a permanent custody decree, we need not discuss issues relating to the temporary custody decree. We see nothing in Abigail's contention that the temporary custody

proceeding somehow tainted the court's jurisdiction to enter the permanent decree.

Abigail also contends that the custody decree below would violate the full faith and credit clause (art. 4, § 1) of the Federal Constitution. Divorce decrees of the District Court of the Virgin Islands have the same legal effect as decrees in State courts. Judgments "shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of . . . such Territory or Possession from which they are taken." 28 U. S. C. § 1738 (1958). What the Virgin Islands court could do with respect to its decree the court below could do. *Heard* v. *Heard,* 323 Mass. 357, 374. *Halvey* v. *Halvey,* 330 U. S. 610. *Kovacs* v. *Brewer,* 356 U. S. 604. See *Ford* v. *Ford,* 371 U. S. 187.

Under the law of the Virgin Islands, the decree giving Abigail custody of Wendolyn could be modified. Title 16 of the Virgin Islands Code, Annotated, § 110, expressly grants the District Court power to "set aside, alter or modify so much of the judgment as may provide . . . for the care and custody of the minor children." Such a modification can be justified on the basis of a change in circumstances since the entry of the original decree. See *Viles* v. *Viles,* 316 F. 2d 31 (3d Cir.) (decided under the same statute but relating to the reduction of support payments under the alimony provision of a divorce decree).

In reaching the conclusion that the decree below should stand, we have based it upon events which have occurred since the entry of the 1961 divorce decree. For this reason the full faith and credit clause presents no obstacle.[1] Like-

---

[1] "Most states extend full faith and credit or comity to . . . [foreign custody] decrees by enforcing them without relitigating the issues and by considering modification, if requested, only on the basis of subsequent events or prior events not presented to the initial court. But some courts deny .full faith and credit to such decrees in proceedings to enforce or modify them, by readjudicating the previously litigated facts." Ratner, Child Custody in a Federal System, 62 Mich. L. Rev. 795, 798. The United States Supreme Court has thus far refrained from determining the extent to which the full faith and credit clause forecloses a consideration of events which have occurred prior to the entry of the initial custody decree by a foreign court. See *Kovacs* v. *Brewer,* 356 U. S. 604. See also *Halvey* v. *Halvey,* 330 U. S. 610; *Ford* v. *Ford,* 371 U. S. 187.

wise, because the original decree is modifiable in the Virgin Islands, a contention based on res judicata must also fail. *Oliver* v. *Oliver,* 151 Mass. 349, 351. *Hersey* v. *Hersey,* 271 Mass. 545, 550. In view of the grounds upon which we rest our decision, we deem it unnecessary to consider what the result would have been if the decree were based on events occurring prior to the entry of the original decree.

*Decrees affirmed.*