THERESA MAY (AMERIGIAN) DUNNE vs.
ARMEN A. AMERIGIAN
(and two companion cases).

Plymouth. February 5, 1968. — May 31, 1968.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, & KIRK, JJ

*Adoption. Contempt.*

Where it appeared that, following a divorce in which the former wife had
been granted custody of minor children of the parties, decrees had
been entered in the divorce court ordering the former husband to make
periodic payments for the support of the children, but also granting
him certain visitation rights with respect to them, that a judge of that
court had ruled that failure of the children's mother to observe the
visitation rights would suspend the support payments, and that, for
some three years prior to the date of petitions in that court for adop-
tion of the children by the mother and a second husband of hers, the
children's father had not made the support payments because he had
been thwarted by her and her second husband in attempting to exer-
cise the visitation rights and had relied on the judge's ruling, it was
held that such failure of the father to furnish the support did not
show that he had "wilfully deserted or neglected to provide proper
care and maintenance" for the children for one year before the date
of the adoption petitions within G. L. c. 210, § 3, and that under § 2
his consent to the adoptions was required and the adoptions were
properly denied for want of his consent. [370-372]

Where it appeared in proceedings in a divorce court that following a
divorce in which the former wife had been given custody of minor chil-
dren of the parties there had been decrees ordering the former husband
to make periodic payments to the former wife for support of the chil-
dren but also giving the former husband certain visitation rights with
respect to the children, and that for a substantial period the former
husband had justifiably withheld the support payments because he
had been deliberately thwarted by the former wife in his attempts to
exercise his visitation rights, it was held that it was proper to dismiss
a petition by her to hold him in contempt for failure to make the pay-
ments, and to allow a petition by him to hold her in contempt for fail-
ure to recognize the visitation rights. [372]

LIBEL for divorce filed in the Probate Court for the county
of Plymouth on July 1, 1957.

The divorce was granted. Subsequently the libellant
appealed from a decree of modification, a decree on a motion
for visitation rights pending hearing on such modification,
a decree on a petition for contempt brought by her against

the libellee, and a decree on a petition for contempt brought against her by him, all by *Sullivan,* J.

Two PETITIONS for adoption filed in the same court on April 29, 1965, by the libellant in the divorce case and her second husband, James F. Dunne, III.

The petitioners appealed from decrees by *Sullivan,* J.

*Timothy J. McInerney (James P. Kiernan* with him) for Theresa M. (Amerigian) Dunne & another.

*Edward H. Stevens* for Armen A. Amerigian.

SPALDING, J. These are a series of proceedings in the Probate Court which have extended over several years. Some of the matters were heard by the First Judge of Probate for Plymouth County; but most of them were heard by a judge from another county sitting by designation under G. L. c. 217, § 8. In each of the matters appealed from there was a report of material facts by the judge. The evidence is reported.

Theresa M. Dunne married Armen Amerigian in 1954. Two children were born of the marriage, Armen Edward and Diane Marie. The parties were divorced in 1958 and each remarried. Theresa was granted custody of the children and Armen was ordered to pay $35 a week for their support. He was also to have "the right to see and take the minor children at all reasonable times."

In February of 1959 Armen brought a petition for modification of the divorce decree in which he sought, among other things, custody of the children. A decree was entered in January, 1960, which reduced the amount of support for the children to $15 a week, and set forth in detail the times and places where Armen could visit with them. The payments for support were to continue "so long as the foregoing [visitation] arrangement shall be carried out." At the same time the judge placed in the files a memorandum in which he recited that he had appointed a guardian ad litem to represent the children and that the report of the guardian indicated that "difficulty arises in connection with the rights of the father to visit the . . . children." After setting forth the visitation arrangement embodied in the decree, he con-

cluded, "If the arrangement is not carried out, the guardian ad litem will investigate the circumstances again, and if there is any fault on the part of the mother, the payments for the support of the children will be suspended, and the question of their custody may be reopened at the discretion of the guardian ad litem."

In May, 1960, Theresa brought a petition in which she sought to modify Armen's visitation rights. This relief was not granted but a new decree was entered in June, 1961, changing somewhat the times and places of visitation. The decree further provided that "[b]eginning . . . July 2nd, 1961, . . . [Armen] is to pay fifteen . . . dollars each week for the support of said children."

At the time of the entry of the decree the judge made a memorandum reciting that payments under the prior decree "have been suspended at the suggestion of the Court because of the litigation and conflict between statements of the petitioners concerning rights of visits."

There was a further modification changing the amount of weekly support payments to $20 and giving substantially the same rights of visitation to Armen. There were other petitions and decrees but these will be discussed later. With the foregoing facts as a background, we turn to the questions presented by these appeals.

1. In April, 1965, Theresa and her husband brought petitions to adopt the children and change their names. After hearing, decrees were entered denying the petitions. The petitioners appealed.[1]

The petitions were rightly denied. General Laws c. 210,

---

[1] In August, 1962, a decree of adoption had been entered under a prior petition but by a subsequent decree this was vacated. We need not discuss the latter decree at length. The petitioners have filed two briefs. In their earlier brief they challenge this decree. In their later and more comprehensive brief they do not attack it, and it would appear that they do not now press the point. Although the petitioners appealed from the vacating decree, they later moved that the appeal be dismissed and the motion was allowed. At all events, there is nothing in the point if it were properly before us. The findings of the judge establish that the decree of adoption was entered in proceedings in which Armen did not appear and contest and that this failure was due to the negligence of his then (not the present) counsel; and that Armen had a good defence to the petition which, but for the neglect of his counsel, he would have presented. The vacating of the decree in these circumstances was not error. *Sullivan* v. *Sullivan*, 266 Mass. 228.

§ 2, provides that a decree for adoption shall not be made without the written consent of the lawful parents. Sections 3 and 3A set forth certain exceptions to this requirement. The only exception here relevant is that contained in § 3 which provides that the consent mentioned in § 2 is not required if the parent has "wilfully deserted or neglected to provide proper care and maintenance for such child for one year last preceding the date of the petition, and the foregoing provision shall be applicable to the parent or parents of the child and their consent shall not be required notwithstanding the absence of a court decree ordering said parent or parents to pay for the support of said child . . . ."

As Armen has not consented to the adoption petitions, the petitioners seek to bring the case within the above quoted provisions of § 3, because, as is the fact, Armen has paid no support for the children for over a year preceding the filing of the adoption petitions. See *Adoption of a Minor*, 343 Mass. 292, 296–298.

On this issue, which is decisive of the case, the designated judge made detailed findings, which included the following. Armen paid the amounts ordered for support of his children until March 2, 1962. But from that date on he has paid nothing for their support. On January 18, 1960, at a hearing before the First Judge of Probate, Theresa was told (and this, as noted above, was incorporated in a memorandum made by the judge) that she had to let Armen see his children and take them at reasonable times, and if she refused Armen was not to pay for their support. Since March 2, 1962, the children have been supported by Theresa's present husband, James F. Dunne, III. Armen has been thwarted in his attempts to see his children by Theresa and her husband and has seen them "on very few occasions." And prior to March 2 they have "refused consistently to allow . . . [Armen] to see and take the . . . [children]."

The judge found that Armen "loves the children and honestly wants to enjoy their company" and does not want them adopted by the petitioners; he is "ready and willing" to support them if he is allowed to see and take them at

reasonable times. In withholding support Armen relied on the memorandum of the First Judge and his statement in open court. His failure to support the children was not "deliberate nor intentional." The judge concluded that Armen did not wilfully "desert nor neglect to provide suitable support for . . . [his children] within one year from the filing of said petition."

The findings of the judge were amply supported by the evidence and they were fatal to the petitioners' case. To dispense with the requirement of Armen's consent the petitioners were required to show that he had "wilfully deserted or neglected to provide proper care and maintenance for . . . [the children] for one year last preceding the date of the petition." This, as the findings of the judge make clear, they did not establish.

2. Armen filed a petition for contempt in May, 1965, alleging that Theresa failed to obey the decree of September 26, 1961, by refusing to allow him to see the children. In October, 1965, Theresa filed a petition for contempt alleging that Armen failed to obey the decree of September 26, 1961, because he was in arrears on his support payments. The court subsequently dismissed Theresa's petition for contempt and granted Armen's petition. From these decrees Theresa appeals.

It was not error for the judge to dismiss Theresa's petition for contempt and to allow Armen's petition. The evidence amply establishes that Theresa deliberately, and over a long period of time, disobeyed various decrees by refusing to allow Armen to see his children.

Theresa urges that Armen should be held in contempt because of his failure to make support payments. This argument has been answered above.

3. We have considered the arguments in opposition to the decree of January, 1966, modifying Armen's visitation rights and those relating to Armen's motion for visitation rights pending a hearing on his motion for modification. They are lacking in merit and do not require discussion.

*Decrees affirmed.*