ROBIN ANN GIL *vs.* GAETANO SERVIZIO.

Essex. December 8, 1977. — May 9, 1978.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, WILKINS, & LIACOS, JJ.

*Divorce*, Custody of child, Foreign divorce. *Probate Court*, Custody of child. *Residence. Jurisdiction*, Custody of child.

Where there was sufficient evidence in a hearing on a petition brought pursuant to G. L. c. 208, § 29, to support a finding that children of divorced parents living at the Massachusetts home of their mother, who had brought them here from their father's home in Michigan just prior to filing the petition to obtain custody of them, were residents of Massachusetts at the time of the filing of the petition even though their father had been granted custody by a foreign court, but no findings of fact were reported by the Probate Court judge in dismissing the petition for lack of jurisdiction, this court vacated the order and remanded the case to the Probate Court for findings of fact and decision. [192]

PETITION filed in the Probate Court for the county of Essex on April 28, 1975.

A motion to dismiss was heard by *Pettoruto*, J.

The Supreme Judicial Court granted a request for direct appellate review.

*David D. Kerman* for the plaintiff.

*Irving E. Kane* for the defendant.

QUIRICO, J.   The plaintiff, Robin Ann Gil (formerly Servizio), and the defendant, Gaetano Servizio, were divorced by a Haitian court at the initiation of the defendant. In this action the plaintiff petitioned the Probate Court, pursuant to G. L. c. 208, § 29, prior to its amendment by St. 1975, c. 400, § 30,[1] for a decree awarding to her the custody of the children. The judge dismissed the petition with prejudice for lack of jurisdiction. The plaintiff appealed, and we granted her application for direct appellate review. G. L. c. 211A, § 10 (A). Because no findings of fact were reported by the Probate Court judge, we are unable to determine conclusively whether jurisdiction to hear the petition exists in this case. We do hold, however, that there is sufficient evidence, much of it undisputed, to support a decision that there is jurisdiction. We therefore vacate the order of dismissal and remand the case to the Probate Court.

The relevant evidence is summarized.[2] The plaintiff and the defendant were married in Lynn in 1969. Two children were born to them in Beverly, a boy, Riccardo, on May 6, 1970, and a girl, Ronda Lee, on September 7, 1971. Marital difficulties developed and in May, 1973, the defendant obtained a divorce decree from a Haitian court.[3] The decree also awarded custody of the couple's children to the defendant. At the time of the divorce both the parents and the

---

[1] General Laws c. 208, § 29, provides: "If, after a divorce has been decreed in another jurisdiction, minor children of the marriage are inhabitants of or residents in this commonwealth, the superior court or probate court for the county in which said minors or any of them are inhabitants or residents, upon petition of either parent or of a next friend in behalf of the children, after notice to both parents, shall have the same power to make decrees relative to their care, custody, education and maintenance, and to revise and alter such decrees or make new decrees, as if the divorce had been decreed in this commonwealth." The 1975 amendment has no significance to the issues presented here.

[2] The evidence summarized comes from affidavits submitted by the parties during other proceedings in this case.

[3] The plaintiff claimed that the divorce was obtained without her knowledge or consent.

children were domiciled and resident in Massachusetts, and it appears from the record that they had been so domiciled and resident since the marriage.

After the divorce the defendant left Massachusetts with the children and went to his native Italy, where he stayed for a year. In April, 1974, they returned to this country and settled in Detroit. The plaintiff had joined the family in Italy and came back with them to Detroit. However, after spending a month there, she returned to Massachusetts, apparently as a result of renewed difficulties between herself and the defendant.

In April, 1975, the plaintiff went back to Michigan to see her children. The conditions in which she found them living alarmed her and caused her concern for their welfare.[4] After an unsuccessful attempt to obtain legal assistance in Detroit she took the children, without the defendant's consent, back to Massachusetts with her. It was later determined that Ronda Lee, who at this time was approximately three and one-half years old, was afflicted with a type of venereal disease.

The plaintiff arrived in Massachusetts with the children on April 26, 1975. Two days later she petitioned the Probate Court, pursuant to G. L. c. 208, § 29, for an award of both temporary and permanent custody of the children. The defendant appeared specially and moved to dismiss her petition for lack of jurisdiction.[5] Temporary custody was first given to the mother, and then to the Department of Public Welfare, by the judge of probate. On June 13, 1975, the judge returned custody of the children to the defendant, pending a hearing on the merits. The defendant was also allowed to remove them from the Commonwealth on the posting of a bond of $1,000. An attempt to have this order

[4] In particular, the plaintiff claims to have observed hypodermic syringes, needles, and a variety of drugs, including penicillin, in the apartment. The truth of these claims is not material to the limited issue before us here.

[5] The defendant also filed a complaint in the Probate Court charging his wife with fraudulently taking the children from his custody.

stayed by a single justice of this court and of the Appeals Court failed, and the children returned to Detroit with their father. Subsequently, after a full hearing, the defendant's motion to dismiss was granted, and the petition was dismissed with prejudice.

We note at the outset that neither party has challenged the validity of the Haitian divorce decree, and we therefore assume its validity. We also assume the validity of the custody order accompanying the decree. Nevertheless, a Probate Court of this Commonwealth, under the authority granted by G. L. c. 208, § 29, has the "power to make decrees relative to [the] care, custody, education and maintenance" of children whose custody has been previously passed on by a foreign court if it finds that they were "inhabitants of or residents in" Massachusetts when a petition in a court of the Commonwealth was filed.[6] The Servizio children are clearly not inhabitants of Massachusetts, since an inhabitant, within the meaning of § 29, is a domiciliary of the Commonwealth, *Glass* v. *Glass*, 260 Mass. 562, 565 (1927); the domicil of the Servizio children, being the same as the domicil of their parent who has lawful custody of them, *State Tax Comm'n* v. *Felt*, 331 Mass. 63, 65-67 (1954); Restatement (Second) of Conflict of Laws § 22, Comment d (1971), was Michigan.[7] Therefore jurisdiction under § 29 is supported in this case only if the children were residents of Massachusetts, within the meaning of the statute, at the time of the filing of the petition.[8]

---

[6] Since the Haitian decree was not issued by a court of another State, the full faith and credit clause of the Constitution of the United States, art. 4, § 1, does not preclude the Commonwealth's courts from making such judgments. *Aetna Life Ins. Co.* v. *Tremblay*, 223 U.S. 185, 190 (1912). Restatement (Second) of Conflict of Laws § 117, Comment c (1971).

[7] The removal of the children from Michigan by the plaintiff, in violation of the outstanding custody order, does not operate to change their domicil. *Conley* v. *Conley*, 324 Mass. 530, 534 (1949).

[8] The court would not be deprived of jurisdiction, if it existed at the filing of the petition, by the subsequent removal of the children from the Commonwealth. Cf. *Hersey* v. *Hersey*, 271 Mass. 545, 550-551 (1930).

The issue of the status of children as residents of Massachusetts under G. L. c. 208, § 29, was reviewed in *Aufiero* v. *Aufiero*, 332 Mass. 149 (1955), a case with facts comparable to those here. In 1949, while living in New York, Mr. and Mrs. Aufiero separated, and Mrs. Aufiero returned to her parents' home in Quincy, leaving their three-year old daughter in New York with Mr. Aufiero's parents. Three years later the husband obtained a Nevada divorce decree, to which his wife waived her right to contest, and custody of the child was awarded to the paternal grandparents. As the result of an agreement between herself and her husband's attorney, Mrs. Aufiero brought the child with her to Quincy for a three-week visit during the summer of 1952. At the conclusion of this period, however, Mrs. Aufiero refused to return the child, thereby violating both the agreement and the terms of the Nevada decree. Instead, she instituted a proceeding in the probate Court here, pursuant to G. L. c. 208, § 29, to obtain permanent custody of her daughter.

We held that the residence requirement of § 29 was met. Residence was defined as an "expected permanence in way of personal presence . . . intended continuance as distinguished from speedy change." *Aufiero* v. *Aufiero*, supra at 153, quoting from *Marlborough* v. *Lynn*, 275 Mass. 394, 397 (1931). Although the Aufiero child had not lived in Massachusetts for long before the petition was filed, we decided that it was the nature of the period spent here, rather than its length, that was controlling. We stated that the child's "presence here had a sufficient aspect of permanence to give this Commonwealth a legitimate interest in [her] protection and welfare. [The child] was not merely a traveller passing through our territory. Her position was different from that of the usual temporary visitor. She was actually living at the home of her mother in a relationship which those in actual control of her intended to make permanent if they could." *Aufiero* v. *Aufiero*, 332 Mass. at 153.

In the case now before us the children were not present in Massachusetts for as long a time prior to the filing of the § 29

petition as was the Aufiero child.[9] Nevertheless, we feel that
the evidence here is sufficient, if believed, to support a con-
clusion that the children were residents of Massachusetts.
The evidence justifies a finding that the actions of the plain-
tiff prior to her filing of the custody petition, like those of
Mrs. Aufiero, were intended to secure the permanent resi-
dence of her children in Massachusetts. On her final visit to
Detroit she claims that she became concerned that the con-
ditions in which the children were living were not con-
ducive to their welfare. To remedy this situation she took
them with her to Massachusetts in the hope of providing a
better home for them with herself. She lived here, and it
could fairly be concluded that her intention was that the
three of them would also live here. When coupled with the
circumstance of the children's past close ties with the Com-
monwealth, this intention to make the children's presence
in Massachusetts permanent, if it were found as a fact by
the judge of probate, would be a significant factor in
deciding the question of their residence and would not be
out-weighed by the fact that they had been here for only
two days before the petition was filed.

Two other factors exist here that also strengthen the rela-
tionship between the children and the Commonwealth and
make it an appropriate forum for decision. First, the ties of
the children to the Commonwealth are strong, since both
were born and spent their first years here, and since they
have relatives who are resident in Massachusetts.[10] This
makes it easier for a court to collect information regarding
the condition of the children and their family situation, and
to evaluate the alternatives for custody and formulate an
order that will be in the best interests of the children. In ad-
dition, both of the parents have been served and are before

[9] It is not clear from the *Aufiero* opinion whether the petition was filed
within the first three weeks during which the daughter was in
Massachusetts pursuant to the agreement of the parents, or shortly
thereafter.

[10] It appears that the plaintiff's mother and grandmother both reside in
the Commonwealth, as do the sister and brother-in-law of the defendant.

the court, thereby ensuring an adversary proceeding and a more complete presentation of the important circumstances of the case. See *Green* v. *Green*, 351 Mass. 466, 471 (1966).

In sum, we conclude that there was sufficient evidence to support a determination that the Probate Court had jurisdiction to decide this § 29 petition. Because of the absence of any findings of fact by the judge of probate, however, we are unable to decide conclusively the issue presented, or to determine whether the judge properly applied the law in ordering the dismissal. We therefore vacate the order and remand the case for findings of fact and a decision consistent with this opinion.[11]

*So ordered.*

---

[11] We wish to express our concern with the practice of "child snatching," which has become quite common recently and which is certainly not in the best interest of children. See *Vilakazi* v. *Maxie*, 371 Mass. 406, 408 (1976). The recent trend in many States, best exemplified by the Uniform Child Custody Jurisdiction Act, has been to restrict the jurisdiction of the courts in custody cases in order to discourage forum shopping and child snatching. The decision here does not stand in contradiction to that movement. The case before us involves significantly more than mere physical presence in the Commonwealth and would, in our view, fit within § 3 (a) (2) of the Uniform Child Custody Jurisdiction Act.