MYRNA S. TOLOS *vs*. ERNEST G. TOLOS.

Worcester.  February 17, 1981. — April 17, 1981.

Present:  GREANEY, ROSE, & DREBEN, JJ.

*Divorce*, Custody of child, Modification of judgment. *Practice, Civil*, Appeal.

Although the mother of a minor child had not complied with an order transferring custody of the child to the father, and was, therefore, not entitled to press her appeal from that order, the appeal was not dismissed where it appeared that a new hearing on custody was warranted for the well-being of the child.  [708]

Where neither the mother of a minor child nor the child was present at a hearing which resulted in an order transferring custody of the child to the father and it appeared that the mother had no reason to believe that the issue of custody would be considered at the hearing and where the order was unaccompanied by findings, the order transferring custody was vacated, and the case was remanded for a new hearing on the custody issue; the award of custody could not be sustained on the ground that the mother had acted improperly in secreting the child from the father.  [708-712]

LIBEL for divorce filed in the Probate Court for the county of Worcester on March 1, 1973.

A complaint for contempt and a complaint seeking modification were heard by *McLellan*, J., and a motion to suspend child support payments was heard by *Conlin*, J.

After a hearing, *McManus*, J., ordered entry of judgment transferring custody of a minor child.

*Mark I. Zarrow* for the plaintiff.

*Bernard J. Conlin* for the defendant.

DREBEN, J.  Before us are four appeals by Myrna Tolos (mother) from orders of three Probate Court judges entered subsequent to a divorce decree.  The orders were entered in connection with attempts, still unsuccessful, by Ernest

Tolos (father) to visit his minor daughter, Rhea. While we note that the mother is not in compliance with at least one of the orders,[1] and hence is not entitled as of right to press her appeals (*Henderson* v. *Henderson*, 329 Mass. 257, 258 [1952]; *Ellis* v. *Doherty*, 334 Mass. 466, 467-468 [1956]; *Murphy* v. *Murphy*, 380 Mass. 454, 462 [1980]), we nevertheless accord the mother an opportunity to participate in a new hearing on the question of custody. We do not dismiss the appeal from that order because a new hearing on custody appears warranted for the well-being of the child. She is "not chargeable with the misconduct of her mother . . . and ought not to be compelled to suffer for it." *Murphy* v. *Murphy*, *supra* at 462, quoting from *Aufiero* v. *Aufiero*, 332 Mass. 149, 153 (1955). We dismiss the appeals from the other orders.

Rhea's parents were divorced in 1973, and the divorce decree incorporated a stipulation of her parents giving her mother custody and providing for child support payments by her father. Neither the decree nor the stipulation referred to visitation rights. After the mother moved from Massachusetts to Colorado with Rhea, the father was unable to arrange for visits with his daughter.

In an effort to obtain visitation rights, he brought a petition for modification, which sought, among other things, a change in custody. The parties had engaged in earlier skirmishes relating to child support payments, and the mother filed a complaint for contempt for arrearages. In June, 1979, the judge who had presided over the divorce proceedings in 1973 held a hearing and, thereafter, ordered visitation for the father, reduced the child support payments, and dismissed the mother's complaint for contempt. The mother strongly opposed visitation, and the judge con-

---

[1] The most recent of the four orders being appealed awarded custody of the child to the father. Counsel for the father informed the court at oral argument and stated in his supplementary appendix that the whereabouts of the mother and the child are unknown. Counsel for the mother did not contradict this statement, and it was conceded that the child is with the mother.

tinued the case until January 8, 1980, for a review of visitation rights, stating, "I don't want Mrs. Tolos to be required to make another trip. Her counsel or her father could be here to report to me."

Rhea's father flew to Denver, failed in his attempt to see his daughter,[2] and was unable to bring the child back to Boston as provided in the court order.[3] In October, 1979, he obtained an order from another judge suspending child support payments, and on January 8, 1980, he obtained an order from a third judge[4] transferring custody of the child from the mother to himself. That order was unaccompanied by findings, and it was conceded at oral argument in this court that neither the mother nor the child was present at the January 8, 1980, hearing. Moreover, there is nothing in the docket entries in the Probate Court, or otherwise, which suggests that the mother had reason to believe that the issue of custody would be considered at the January 8, 1980, hearing.

In these circumstances, we think the order transferring custody to the father should be vacated. Even assuming that the mother acted improperly in secreting the child from the father in Denver, the award of custody cannot be sustained on that ground. *Hersey* v. *Hersey*, 271 Mass. 545, 555 (1930). *Heard* v. *Heard*, 323 Mass. 357, 377 (1948). *Haas* v. *Puchalski*, 9 Mass. App. Ct. 555, 557 (1980). Improper conduct of a parent "cannot be permitted to interfere with the welfare of the child . . .." *Id.*, quoting from *Heard, supra* at 377.

"The uprooting of a child . . . should be done only for compelling reasons." *Jones* v. *Jones*, 349 Mass. 259, 264 (1965). "To warrant the transfer of custody from one parent to another, following a determination of custody in a

---

[2] As is to be expected, the parties in their briefs differ as to the cause of this failure.

[3] A more detailed order entered by a single justice of this court in August, 1979, superseded the original order of June 7, 1979.

[4] The first judge had resigned his office.

divorce proceeding, there must be a relevant change in circumstances." *Haas* v. *Puchalski,* 9 Mass. App. Ct. at 557, and cases cited. See *Schuler* v. *Schuler,* 382 Mass. 366, 368 (1981); *Felton* v. *Felton,* 383 Mass. 232, 239 (1981). The "change must be of sufficient magnitude to satisfy the governing principle by which the court must be guided in these cases, namely, whether the transfer of custody will be conducive to the welfare of the child[ ]." *Fuller* v. *Fuller,* 2 Mass. App. Ct. 372, 376 (1974).

As indicated earlier, there is no suggestion that the mother was notified and deliberately stayed away from the hearing. To the contrary, her absence may be explained by a lack of notice as to the issues to be determined at the hearing and a belief on her part, based on the judge's discussion on June 7, 1979, that the presence of her (the wife's) father at the hearing would be sufficient to protect her interests. Whatever the reason, it is apparent that the judge did not have before him evidence which, with proper notice to the mother, might have been available. Such evidence from the mother and, in the judge's discretion, from the minor child would, of course, be crucial in weighing "all the relevant factors in determining the best interests of the child." *Haas* v. *Puchalski, supra* at 557 n.5. Such decisions require great care. In making them, a court must look to "ground-level facts" and not merely to general testimony from a "possibly self-serving" parent. *Felton* v. *Felton,* 383 Mass. at 240, 242 (case involving visitation rights).

In view of the importance of the order of January 8, 1980, to the welfare of Rhea, and the fact that evidence critical to an intelligent decision — not obtainable at the time of the order changing custody — is likely to be available at a new hearing, we hold that the January 8, 1980, order should be vacated. The Probate Court shall hold a new hearing on custody and such other matters as are deemed appropriate. At such time the judge should hear all the evidence, including, in his or her discretion, reports of investigators. See *Felton* v. *Felton, supra* at 242; G. L. c. 215, § 56A. Thereafter, the judge should make the detailed findings we in-

dicated are necessary where custody is changed. *Haas* v. *Puchalski, supra* at 556 n.5.

Although we determine that the January 8, 1980, order should be vacated, we in no way condone the flouting of it by the mother. For this reason, the order is to stand unless the mother, within thirty days from the date of the rescript, files in the Probate Court a motion for a new hearing on the question of custody. If so, the judge shall vacate the January 8, 1980, order on such conditions as are appropriate to insure a prompt hearing.

While we dismiss the mother's other appeals, see *Henderson* v. *Henderson,* 329 Mass. at 258; *Ellis* v. *Doherty,* 334 Mass. at 467-468; *Murphy* v. *Murphy* 380 Mass. at 462, we note, in order to bring this controversy nearer to an end, that there is no error apparent on the record in the entry of any of the three orders being appealed. There is no question that the June, 1979, order for visitation was proper. The importance from a legal viewpoint of both parents having frequent and continuing association with their child has recently been reaffirmed. *Felton* v. *Felton, supra* at 234. The evidence adduced at the June, 1979, hearing warranted, although it did not require, a finding of changed circumstances and the entry of the orders reducing child support and dismissing the complaint for contempt for arrearages. Since there was uncontroverted evidence that the mother had substantial assets, there is little likelihood that the October order suspending child support payments was in its operation detrimental to the child. It is true "that proceedings like the present are not to discipline or reward either parent. But these considerations do not prevent the Probate Court from enforcing its decree that the father should see the child . . .. Nor . . . [is the court deprived] of all power to revoke a support order in the circumstances here disclosed." *Gilman* v. *Gilman,* 327 Mass. 143, 147 (1951). See also *Dunne* v. *Amerigian,* 354 Mass. 368, 369, 371-372 (1968); *Ruquist* v. *Ruquist,* 367 Mass. 662, 666-667 (1975).

For the reasons stated earlier in this opinion, the matter of custody is remanded to the Probate Court for further pro-

ceedings not inconsistent with this opinion.   The appeals from the other orders are dismissed.   The husband is to have the costs of these appeals.

*So ordered.*