NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-361

MARSHA PHILEMOND

vs.

DIONY REJOUIS.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Following a trial, a Probate and Family Court judge entered a modification judgment awarding the father continued sole legal and physical custody of the parties' son and suspending the mother's parenting time.  The mother appeals, arguing that the judge abused his discretion in denying her requested modification and that the suspension of her parenting time was clear error.  We affirm.

Background.  The parties are the never married parents of a child born in September 2015.  During childbirth, the child suffered a nerve injury causing paralysis to his right hand that has required "extensive and on-going physical therapy and occupational therapy" and necessitates future surgery.  "Without

question," the father has been the child's primary caretaker since he was three months old, along with significant assistance from the father's live-in partner since 2017. The mother had no contact with the child between 2017 and 2021, during which time she was intermittently living in Haiti, New York, North Carolina, and Massachusetts with her three other children.[1]

On May 21, 2019, the mother filed a complaint for custody, support, and parenting time. Based on an oral agreement between the parties, the judge issued a judgment dated January 27, 2021 (January 27 judgment), incorporating the parties' agreement to, as relevant here, award the father sole legal and physical custody of the child and virtual parenting time to the mother every other week with weekly telephone calls. On January 4, 2022, the mother filed a complaint for modification seeking sole legal and physical custody of the child, alleging that the father had denied her parenting time on two occasions, that her housing conditions had improved since the January 27 judgment, and that she wanted her other children to build a relationship with the child. The father filed an answer and counterclaim

---

[1] The father has no biological relationship to the mother's other children and these children are not the subject of this appeal.

2

seeking, among other things, to have all the mother's future parenting time supervised.[2]

On September 20, 2022, the judge appointed a guardian ad litem (GAL) to investigate and report on the issues of custody and parenting time. The GAL issued a report, and as relevant here, recommended that the mother's parenting time be suspended until she engaged in reunification psychotherapy to work on establishing a relationship with the child, followed by therapist-guided reintroduction to parenting time. The GAL noted that while the father encouraged the child to meet and engage with the mother, the child was fearful of and uncomfortable around the mother and would not meet with her without the GAL remaining present. The child voiced to the GAL that the mother "grabbed [him] like a kidnapper," and that if he had to see her, he wanted it to be "at a big place. Not small like here because [he] can't get away." The GAL's report was admitted in evidence without objection, and, following a trial on the modification complaint and counterclaim, the judge found

---

[2] On April 6, 2022, the judge found the father in contempt for "having repeatedly neglected and refused to allow [the] Mother parenting time," and ordered gradual monthly increases in the mother's in-person parenting pending trial on the modification complaints. Following conflicts over pick-up times and locations for visitation, and "mutual derogatory accusations and acrimonious exchanges," two further temporary orders issued specifying the time and place for scheduled parenting time with the mother.

3

that the mother had not met her burden, adopted the GAL's recommendation, and issued a judgment suspending the mother's parenting time pending progress with reunification therapy. This appeal followed.[3]

Discussion.[4] 1. Modification judgment. To obtain a custody modification, the requesting party "must first establish that a material and substantial change in circumstance has occurred to warrant a change in custody, and that the change is in the child's best interests." E.K. v. S.C., 97 Mass. App. Ct. 403, 408 (2020). "'We review the judgment and the subsidiary findings of fact for abuse of discretion or other error of law,' . . . giv[ing] due regard to the judge's assessment and determination of credibility of the witnesses and the weight of the evidence" (citation omitted). Id. at 409.

The mother argues that it was an abuse of discretion for the judge to find no material or substantial change in circumstances warranting modification where the mother's living

_____

[3] The father did not appeal from the judgment on his counterclaim for modification.

[4] In a footnote in his brief, the father contends that the mother's notice of appeal does not comport with Rules of Appellate Procedure. See Mass. R. A. P. 3 (c), as appearing in 481 Mass. 1603 (2019). As "[a]rguments relegated to a footnote do not rise to the level of appellate argument," we decline to address this argument. Glass v. Lynn, 49 Mass. App. Ct. 352, 358 (2000), quoting Commonwealth v. Lydon, 413 Mass. 309, 317-318 (1992).

situation improved from a two-bedroom apartment to a four-bedroom apartment, she extended her local support system, and she obtained a license in early childhood education and care. We disagree.

Here, the judge found that the mother's "testimony only established that she is now caring for her three other children, and that she has moved into a four-bedroom apartment." The mother's testimony did not focus on the issue of changed circumstances, and while she stated that she had a plan to care for the child and to cultivate a relationship between him and her other children, she did not elaborate on what that plan would be and ultimately conceded that it was "not there yet." Where the overarching issue regarding custody was the mother's long absence from the child's life and the child's resulting discomfort and reluctance to engage with her, we discern no abuse of discretion in the judge's determination that having more space in her home for the child was not sufficiently material to warrant a transfer of full custody to the mother. See Tolos v. Tolos, 11 Mass. App. Ct. 708, 710 (1981) ("The uprooting of a child . . . should be done only for compelling reasons" [citation omitted]); Haas v. Puchalski, 9 Mass. App. Ct. 555, 557 (1980) (change in circumstances must be relevant).

Moreover, the judge found that the "[m]other failed to present any credible evidence that a change in the current

5

custody arrangement would be in the child's best interest."  "In custody matters, the touchstone inquiry [is] . . . what is best for the child" (quotation omitted).  Malachi M. v. Quintina Q., 483 Mass. 725, 740 (2019), quoting Hunter v. Rose, 463 Mass. 488, 494 (2012).  "[T]he best interests analysis is a child-centered one that focuses on the specific needs and interests of a child and how these might best be met" (citation omitted).  E.K., 97 Mass. App. Ct. at 408.  "The determination of which parent will promote a child's best interests rests within the discretion of the judge" (citation omitted), J.S. v. C.C., 454 Mass. 652, 656 (2009), who may consider such factors as

> "which parent has been the primary caretaker of, and formed the strongest bonds with, the child, the need for stability and continuity in the child's life, the decision-making capabilities of each parent to address the child's needs, and the living arrangements and lifestyles of each parent and how such circumstances may affect the child."

El Chaar v. Chehab, 78 Mass. App. Ct. 501, 506 (2010).

Here, the judge carefully considered the child's physical and emotional needs, including the child's ongoing "significant medical issues" which the father had appropriately addressed throughout the child's life without help from the mother.  See Williams v. Massa, 431 Mass. 619, 636 (2000) (considering which parent "would more likely be able to make appropriate decisions to address the child['s] special needs").  The judge also gave weight to the parties' respective relationships with the child,

6

noting the "stark difference" in the child's interactions with the father as compared to the mother. The judge credited the GAL's findings that the child "appears well cared for and showed comfort with and affection for [the] Father and [the father's partner], who he identified as his mother"; while the mother "had little, if any, familiarity with [the child's] preferences and developmental level." See Custody of Kali, 439 Mass. 834, 842 (2003) ("stability and continuity with the child's primary caregiver is itself an important factor in a child's successful upbringing"). Moreover, the judge acknowledged that the child "does not wish to have any contact with the Mother or his half-siblings," and was resistant to spending time with the mother without the GAL remaining physically present. See Bak v. Bak, 24 Mass. App. Ct. 608, 617 (1987) (preference of older child "is a factor to be considered," although it "is not given decisive weight").

To the extent the mother contends that the "tumultuous relationship" between the parties was dispositive of the judge's custody decision, this is belied by the record. The judge determined that "[n]ot only did [the] Mother fail to meet [her] burden" to demonstrate a material and substantial change in circumstances, "but the trial testimony clearly demonstrated that [the] Mother and Father are unable to communicate and make major life decisions regarding the child's welfare." Thus, in

7

addition to the absence of evidence of relevant material changed circumstances discussed supra, the judge appropriately considered the effect of the parties' relationship on their ability to jointly parent the child.  See Smith v. McDonald, 458 Mass. 540, 553 (2010), quoting Carr v. Carr, 44 Mass. App. Ct. 924, 925 (1998) ("Joint custody is inappropriate for parents whose relationship to date has been 'dysfunctional, virtually nonexistent, and one of continuous conflict'").

2.  Suspension of parenting time.  The mother contends that the judge erred in suspending her parenting time where the judge failed to consider how the father's actions contributed to her inability to foster a relationship with the child.  We are not persuaded.

> "[A] judge is authorized not only to order sole legal and physical custody with one parent when it serves the best interests of the child, . . . but also . . . to impose conditions and restrictions on and to suspend any visitation by the other parent when it is determined that visitation would not be in the best interests of the child."

Schechter v. Schechter, 88 Mass. App. Ct. 239, 247-248 (2015). In determining the child's best interests, the judge may "consider the widest range of permissible evidence, including the reports and testimony of a [GAL], [and] evidence of the history of the relationship between the child and each parent." Ardizoni v. Raymond, 40 Mass. App. Ct. 734, 738 (1996).

8

Here, the judge credited the GAL's findings and adopted the recommendation to suspend the mother's parenting time given the child's reluctance to be alone with the mother and the mother's inability to accept "responsibility for how her actions and absence may have contributed" to her fraught relationship with the child.  While the mother contends that "the child's reluctance to see [her] is due to the ongoing lack of visitation," which the judge credited was due in part to conflicts with the father, the mother demonstrated a lack of insight into how her years-long absence from the child's life predating the conflicts over visitation affected their relationship.  See Schechter, 88 Mass. App. Ct. at 248 ("whether a parent is able to separate his or her needs and interests from those of the minor child[]" is relevant in custody determinations [citation omitted]).  Indeed, the judge noted that the prior attempts to foster a relationship between the mother and the child through gradual increases in parenting time had proved unsuccessful without therapeutic intervention where the child expressed that he did not want to have any contact with her, he would not attend a meeting with her without promises of safety and support from the GAL, and he resisted her attempts at connection and physical affection.  Consequently, we discern no error in suspending the mother's parenting time where the judge determined, and the record reflects, that

9

reunification therapy and guided reintroduction to parenting time would serve the child's best interests.[5]

Judgment dated July 5, 2023, on mother's complaint for modification and father's counterclaim for modification affirmed.

By the Court (Blake, C.J., Hodgens & Toone, JJ.[6]),

*Paul Little*

Clerk

Entered:  May 2, 2025.

---

[5] The mother additionally contends that it was clear error for the judge not to credit her testimony that the father had physically abused her during their relationship.  As "it is the trial judge who, by virtue of his firsthand view of the presentation of evidence, is in the best position to judge the weight and credibility of the evidence," we defer to the judge's assessment of the mother's credibility.  Cerutti-O'Brien v. Cerutti-O'Brien, 77 Mass. App. Ct. 166, 169 n.3 (2010), quoting Edinburg v. Edinburg, 22 Mass. App. Ct. 199, 203 (1986).

[6] The panelists are listed in order of seniority.

10