ADOPTION OF ARTHUR (and a companion case[1]). No. 92-P-848. March 15, 1993. *Adoption*, Dispensing with parent's consent. *Minor*, Adoption, Guardian ad litem. *Evidence*, Child custody proceeding, Hearsay, Report of guardian ad litem.

A remarkable fourteen year old boy, whom we shall call Arthur (the name is fictitious) has been under the care and custody of the Department of Social Services (department) for most of his life. The most recent petition (brought pursuant to G. L. c. 119, § 23) was filed in 1986 and was contested by both of his parents, who live apart and have never been married to one another.[2] He appreciates that living with either biological par-

---

[1] The companion case is a proceeding for the care and protection of Arthur.

[2] Arthur has suffered many separations from his mother, who unfortunately was beset with a substantial mental illness and emotional instability exacerbated by al-

ent is no longer feasible and has settled into a caring foster home where he does extremely well, performing superbly in school and maintaining an active recreational life. Because it would accelerate his final placement, the department filed on April 10, 1988, a petition in the Probate Court to dispense with the consent of Arthur's parents to his adoption.

The two cases were consolidated for trial, as expressly authorized by G. L. c. 210, § 3, beginning March 27, 1989. After five full days of trial, the judge found that the parents were currently unfit to care for Arthur, and judgment in the custody case was entered awarding permanent custody of Arthur to the department. The judge in the § 3 case, after recounting a long saga of futile efforts by the department to reunite the biological family, ruled that Arthur's "best interests . . . are further served by an open adoption plan as proposed by the department." Both parents appealed.

1. *Arthur's In Camera Expression of Preference for Adoption.*

The judge interviewed Arthur in the presence of his counsel, who by agreement reported the meeting to the parents' lawyers. As a result he found that Arthur wanted to be adopted by a family similar in makeup to his foster family, although he remained concerned about his biological parents. The judge conducted his voir dire interview of Arthur despite the father's timely objection to the exclusion from the interview of him or his counsel.

Because of the delicacy of cases involving interests of children which may be adverse to that of their parents, a trial judge "is not restricted to the ordinary modes of trial, but may direct that the children be brought before him, and may examine them privately, and may also avail himself of affidavits or other reasonable and proper sources of evidence." *Dumain* v. *Gwynne*, 10 Allen 270, 275 (1865). See also *Jenkins* v. *Jenkins*, 304 Mass. 248, 252 (1939). Other jurisdictions are in accord. See *In re Marriage of Kramer*, 580 P.2d 439, 441-442 (Mont. 1978); *Commonwealth* v. *Sablosky*, 178 Pa. Super. 428, 432 (1955); *Stuart* v. *Stuart*, 209 Cal. App. 2d 478, 482-483 (1962).

We think, therefore, that the judge committed no error of law and acted within his sound discretion in giving weight to Arthur's expressed desire to be adopted. Nor was there any violation of the father's rights under the confrontation clause of either the Federal or State Constitution, as the father contends, because the proceedings were civil in nature. See *Custody of Tracy*, 31 Mass. App. Ct. 481, 485 (1991).

2. *Sufficiency of the Evidence of Parental Unfitness.*

The record supports the judge's conclusion that the mother has consistently been incapable of providing a stable and safe household for her son. Further, the judge specifically found that since 1987, the "[m]other's ac-

coholism. His father, a chronic alcoholic, has failed through the years to maintain regular contact with him.

tions . . . have not been consistent with her expressed wishes to regain custody of [Arthur]. She has been inconsistent in her visits and . . . continues to show no ability to place her son's needs before her own."

The father's plight is even worse. The judge noted in his findings, and the record supports his view, that over the years the father has been homeless, moving from shelters to friends' homes and occasionally living with members of his immediate family. He has never maintained an apartment of his own.

The situation here is strikingly analogous to that described in *Petition of Dept. of Pub. Welfare to Dispense With Consent to Adoption*, 371 Mass. 651 (1976). There, the judge found the parent unfit to care for her child because she had seldom been employed, had no means of support, no stable relationship with anyone with an identifiable source of income, and had never formulated a realistic plan as caretaker of a child. *Id.* at 654.

3. *The Admission in Evidence of the Guardian Ad Litem's Reports.*

The father contends that the judge mistakenly admitted in evidence, and impermissibly relied upon, three guardian ad litem reports because the guardian was not qualified to offer recommendations to the court regarding Arthur's best interest. He further argues that the reports were rife with inadmissible hearsay and opinion evidence.

It is well settled in our case law that a report compiled pursuant to G. L. c. 215, § 56A, is not objectionable as hearsay, nor is it an unlawful delegation of the court's duty. *Jones* v. *Jones*, 349 Mass. 259, 264 (1965). The focus of § 56A is on the investigation of matters relating to the welfare of children, and there is no requirement in this case for the guardian to possess special credentials or knowledge concerning psychiatry, psychology, or social work. Contrast *Hoehn* v. *Hoehn*, 11 Mass. App. Ct. 1000 (1981), where the investigation involved an individual whose actions were committed while she was out of control and possibly incompetent.

Lastly, we do not read the judge's findings as inconsistent with the reminder we gave in *Delmolino* v. *Nance*, 14 Mass. App. Ct. 209, 212 (1982), quoting from *Jones* v. *Jones*, *supra* at 264, that a judge should draft his order from his own conclusions and not merely parrot the views or conclusory recommendations contained in an investigator's report.

*Judgments affirmed.*

*Judith A. Wolfe* for the mother.
*John Mackey* for the father.
*Richard A. Salcedo* for Department of Social Services.
*Lucille R. DiPietro* for the minor.