## ADOPTION OF TINA.[1]

No. 98-P-0672.

Worcester. September 10, 1998. - November 16, 1998.

Present: ARMSTRONG, DREBEN, & JACOBS, JJ.

*Parent and Child,* Care and protection of minor, Dispensing with parent's consent to adoption. *Minor,* Care and protection. *Adoption,* Care and protection, Dispensing with parent's consent. *Practice, Civil,* Care and protection proceeding, Findings by judge. *Evidence,* Child custody proceeding, Hearsay, Judicial discretion. *Witness,* Unavailability.

In a combined proceeding for care and protection and to dispense with parental consent to adoption, the judge properly admitted in evidence the finding, made in an earlier proceeding for care and protection of the parents' other three children, that the father had sexually abused the eldest child, but the judge erred in precluding the parents from controverting the finding [731-732]; further, the judge erred in admitting in evidence hearsay statements of the oldest child, contained in otherwise admissible investigator's and therapist's reports, without a showing that the child was not available to testify or that her statements were reliable, within the meaning of G. L. c. 233, § 82 [732-734]: the matter was remanded for further proceedings.

In a combined proceeding for care and protection and to dispense with parental consent to adoption, the judge did not abuse her discretion in allowing a child witness to testify in camera based on expert testimony of a treating clinician that testimony in court would cause the child severe trauma. [734]

There was no merit, in the circumstances of a combined proceeding for care and protection and to dispense with parental consent to adoption, to a parent's contention that the Department of Social Services had failed to attempt to unify the family. [734]

PETITION filed in the Worcester Division of the Juvenile Court Department on March 11, 1996.

The case was heard by *Jan Lewis Najemy,* J.

*John T. Ouderkirk, Jr.,* for the father.

*Paul Schack* for the mother.

---

[1]A pseudonym.

*Lynne M. Murphy* for Department of Social Services.

*Margaret T. Clapp-Winchester* for the child.

DREBEN, J. The parents of Tina, who was born in March, 1996, appeal from decrees of a Juvenile Court judge entered in a combined proceeding adjudicating Tina in need of care and protection and dispensing with their consent to her adoption. Their main claims are that the judge (1) erroneously admitted the findings entered in a 1994 proceeding adjudicating their three other children in need of care and protection, (2) precluded them from controverting those findings, and (3) erroneously admitted reports of a court investigator and others without redacting hearsay statements of their eldest child regarding sexual abuse. The statements of the eldest child are claimed to have been admitted without adherence to the requirements of G. L. c. 233, § 82, as inserted by St. 1990, c. 339, the text of which is set out in the Appendix to this opinion.

We are constrained to vacate the decrees and remand for further proceedings, as we cannot tell on this record whether the ruling precluding the parents from introducing evidence to contradict the prior determination of sexual abuse by the father was harmless error. See *Adoption of Frederick*, 405 Mass. 1, 6-7 (1989); *Adoption of Paula*, 420 Mass. 716, 722 (1995); *Care & Protection of Isabelle*, 33 Mass. App. Ct. 548, 551 (1992). We are also troubled because portions of documents containing the eldest child's hearsay statements relating to sexual abuse were erroneously admitted and may have affected the result.

We take our facts primarily from the findings of the trial judge supplemented by docket entries and uncontradicted evidence. Tina was born on March 10, 1996, and one day later, the Department of Social Services (DSS) filed a petition for her care and protection and obtained temporary custody. Tina has been in a preadoptive home since July, 1996. Although prior to Tina's birth, DSS had decided to let Tina's mother take her home, when the mother's social worker discovered that Tina's father had been in the delivery room, DSS filed a petition under G. L. c. 119, § 24.[2] Each DSS service plan for the mother, after the conclusion of the prior care and protection proceeding that

---

[2]At first it was not clear to DSS that the father of the other children was Tina's father, but this was established by DNA testing. The doubt was created by the mother who did not want to admit her failure to abide by the DSS service plans requiring her to have no contact with the father.

had determined that the father had sexually abused the parents' oldest daughter, required the mother not to have any contact with the father, and, indeed, a 1994 plan required her to obtain a restraining order against the father.

Witnesses who testified in the present proceeding, which was heard over eleven days, included the eldest child (testifying in camera over the parents' objection), her therapist, the parents, the court investigator, DSS personnel, the court appointed special advocate (CASA), a teacher of a parenting class, and a psychologist who had tested the mother. Numerous reports were also admitted in evidence, many of them containing hearsay evidence of the eldest child and admitted over the parents' (primarily the father's) objection.

1. *Prior findings and preclusion of evidence to contradict them.* "The basis for the court's judgment in the previous case," as stated by the judge in the present case, "was primarily that [the father] had sexually abused at least one of the children, [the oldest child], on more than one occasion, that he had neither admitted so abusing her nor obtained counseling as a sexual abuse perpetrator, and that [the mother] had been unable or unwilling to protect [the oldest child] from the sexual abuse." Over the objections of counsel for the parents, the judge in the present case admitted in evidence the earlier findings, which she found "relevant . . . though not the sole basis" for her decision. She acknowledged that, over the objections of counsel, she "did not allow evidence to be presented which would have the effect of relitigating the issues decided in the previous case regarding children who are not the subject of this proceeding."[3]

The judge's findings show that her decision rested heavily on the determination that the father had abused the eldest child. Although she included findings that the father had made inconsistent statements concerning his employment history and had lied on his financial statements, the crucial finding as to his unfitness was that he "sexually abused the sister of Tina and has not received appropriate counseling to address the issues." The judge did not state the evidentiary basis for this conclusion

[3]The initial ruling on this issue does not appear in the record although the transcript is replete with references to it. This omission, the omission of questions to be asked of the child referred to by the judge in her findings, and the omission of the clinician's comments prior to the eldest child's testimony on the trauma she would suffer by testifying suggest that the transcript on appeal does not include all the proceedings.

and made no subsidiary findings other than a discussion of the eldest child's in camera testimony which, in keeping with the judge's ruling of not going behind the 1994 findings, "allowed [her] . . . to answer questions in camera regarding whether she had any changes or additions to make to her previous testimony."[4]

While the findings as to the mother were more extensive and included a discussion of her depression, her failure to take prescribed drugs, her failure to avail herself of many services offered by DSS, and her incidents of inappropriate behavior,[5] the judge also laid stress on her consistent contacts with the

---

[4]The judge's five numbered findings relating to the eldest child's in camera testimony were as follows:

"18. Due to the issues raised in the previous case of [the eldest child] and her sisters, this Court in this case over the objections of counsel for [the mother and father], allowed [the eldest child], nine years old, to answer questions in camera regarding whether she had any changes or additions to make to her previous testimony. Present in chambers were the attorney for [the child] [the record indicates that this was an error and that the attorney was outside and not in chambers] as well as her therapist, neither of whom was allowed to speak with [the child] or to question her, and the stenographer who recorded the proceedings. This court was particularly concerned that [the child] have the opportunity to recant or modify her previous testimony.

"19. After preliminary questioning of [the child], this Court was satisfied that she understood the distinction between lying and telling the truth.

"20. This Court then briefly questioned her based on questions which had been previously submitted by counsel for all parties. [The questions do not appear in the record.] Following this questioning, counsel were permitted to review [the child's] recorded in camera statements and to formulate additional questions based on her statements. This Court excluded some of those additional questions as irrelevant and beyond the scope of the examination as it had been defined by this Court.

"21. This Court finds that [the child] was available to testify and did so, pursuant to safeguards established by this Court. Further, [the child] answered the questions understanding the distinction between telling the truth and not telling the truth, although she was not formally sworn as an adult witness would be. This Court further finds that [the child's] testimony was reliable and credible.

"22. This Court finds that [the child] did not substantially add to or change her previous testimony. In addition, this Court finds that [the child] expressed concern for the well-being of her sister [Tina] and specifically expressed her concern for [Tina's] safety were she to live with [the mother] and [the father]. [The child] stated that if [Tina] lived with them, she would be hurt."

[5]We reject the mother's contention that many of these findings were clearly erroneous. Our reading of the record finds them supported by the evidence.

father which "association . . . poses a risk of significant harm to [Tina], if [Tina] were ever to live with [the mother]."

At trial and throughout the DSS involvement with the family, both the father and the mother insisted that the father had not sexually abused Tina's sister.[6] That they held this view was confirmed by their therapists and others. Although the mother and father believed that the child had, indeed, been abused, they claimed the abuser was someone else, either a man referred to as Squiggy or a bus driver from the child's day care provider. They attempted to obtain a rape kit, acknowledged by DSS to have been mentioned in the prior proceeding, but were precluded from obtaining it on the ground that it had been available prior to the 1994 proceeding and, hence, under the judge's ruling barring relitigation, was inadmissible. They also objected to the child testifying in camera, and objected to the denial of the mother's request that the judge ask the child about Squiggy and about certain sleeping arrangements which indicated that the child's memory as to prior events was faulty. Certain questions of the child's therapist were disallowed on the ground that they related to pre-1994 matters.

Findings from a care and protection proceeding are to be treated with caution before admission in an adoption proceeding. The better practice may be to exclude such findings, especially where they relate to children other than the child before the court. See *Care & Protection of Isabelle*, 33 Mass. App. Ct. at 550-551. "The parties and the judge are not bound by the findings which carry no special evidentiary weight, and evidence may be offered at the adoption proceeding by any party on any of the issues covered by the findings either to support or contradict them." *Adoption of Paula*, 420 Mass. at 721-722. While it was not error to admit the findings in this case to the extent relevant — as to relevance, see G. L. c. 210, § 3(c)(ii), as inserted by St. 1992, c. 303, § 5 — the preference is for fresh findings, see *Adoption of Simone*, 427 Mass. 34, 44

---

[6]Although the mother had on occasion acknowledged that the father had abused the child, she testified she said so only to placate DSS so she could get the children back. The judge, of course, was not required to believe this testimony, and, in her findings, stated that at least on two previous occasions the mother had testified that she believed the father had sexually abused the child.

(1998), and the care and protection findings should not be conclusively or exclusively determinative of the issues. See *Adoption of Frederick*, 405 Mass. at 6. It was, therefore, error to preclude evidence to contradict them. *Id.* at 6-7. *Care & Protection of Isabelle*, 33 Mass. App. Ct. at 551. This may be particularly true in this case, as the parents withdrew their appeal in the care and protection proceedings involving the other children and signed voluntary adoption surrenders. They may thus have had different objectives in that case than they have with respect to Tina. See *Adoption of Frederick*, 405 Mass. at 6.[7]

2. *Hearsay statements of the older child.* The other main contention of the parents is that inadmissible hearsay was introduced through various reports in violation of G. L. c. 233, § 82. That a child's hearsay statements appear in an admissible report[8] does not render the statements admissible for their truth. See generally Ireland, Juvenile Law § 115 (1993 & 1998 Supp.). "Hearsay contained in an investigator's report is admissible for its truth when there is an opportunity to 'refute the investigator and the investigator's sources through cross-examination and other means.' " *Care & Protection of Rebecca*, 419 Mass. 67, 83 (1994), quoting from *Adoption of Carla*, 416 Mass. 510, 514 (1993). "Other means" with respect to a statement as to sexual abuse by a child under the age of ten refers to the determination required under G. L. c. 233, § 82 or § 83, that such evidence be reliable. See *Care & Protection of Leo*, 38 Mass. App. Ct. 237, 241 n.6 (1995). In addition, for hearsay statements of the child to be admissible, § 82 requires a finding by the judge "that the child is unavailable as a witness."

Although the parents specifically sought findings under G. L. c. 233, § 82, and although the judge in her findings purported to address some of the concerns of that statute, see note 4, *su-*

---

[7]There was some discussion at trial, however not substantiated by the record, that the voluntary surrenders were signed in order that the adoptions be open, that is, that the parents might be able to visit the children.

[8]The Supreme Judicial Court has left open the question whether an investigator's report is admissible in an adoption case, as contrasted with a care and protection proceeding. See G. L. c. 119, § 21; *Adoption of Mary*, 414 Mass. 705, 709 & n.5 (1993); *Adoption of Paula*, 420 Mass. at 727. Compare *Adoption of Astrid*, 45 Mass. App. Ct. 538, 545-546 (1998), and cases cited.

*pra*, her finding that the child was "available" [9,10] did not, in view of the severely limited ability of the parents to cross-examine the child, render the investigator's report admissible under G. L. c. 119, § 21, insofar as it included hearsay evidence of the child. See *Adoption of Carla*, 416 Mass. at 514. Where, as here, the parents were "denied the opportunity to rebut effectively" the child's hearsay statements, see *ibid*, the judge was required by § 82 to make findings as to their reliability. Her findings were not sufficient under that statute as supplemented by *Adoption of Quentin*, 424 Mass. 882, 893 (1997), to permit the introduction of many of the hearsay statements of the child contained in the investigator's report or the CASA reports.[11] See *Adoption of Kimberly*, 414 Mass. 526, 532-533 & n.15 (1993), for an example of findings meeting the statute's requirement of reliability.

In addition to the requirements of § 82, the Supreme Judicial Court in *Adoption of Quentin*, 424 Mass. at 893, suggested that the following procedures be incorporated into § 82 proceedings:

(1) DSS "must give prior notice to the [parents] that it will seek to use such statements."

---

[9]Paragraph 5 of § 82 (*b*) permits a finding of unavailability if "the court finds, based upon expert testimony from a treating . . . clinician, that testifying would be likely to cause severe psychological or emotional trauma to the child."

A paragraph in the May 21, 1997, CASA report states that the child's therapist "repeated her concern that testifying would not be good for [the child], especially if she had to face her birth parents while testifying." Prior to the decision to have an in camera hearing, the child's counsel referred to the trauma indicated by the therapist the child would suffer by testifying. See second sentence of note 3, *supra*. The therapist's subsequent testimony, which appears in the record, confirmed that the child had emotional problems even testifying in camera.

[10]Where, as here, a care and protection hearing is joined with a petition to dispense with consent to adoption, findings should comply with the stricter requirements of § 82 which are applicable to the latter proceeding, rather than with § 83. Compare *Care and Protection of Rebecca*, 419 Mass. at 75-81 & n.12, with *Adoption of Quentin*, 424 Mass. 882, 892-893 (1998). Unlike § 82, which is applicable to a proceeding to dispense with consent to adoption, § 83, which relates to admissibility of hearsay in a care and protection proceeding, does not require a finding that the child be unavailable. *Care and Protection of Rebecca*, *supra* at 77.

[11]For purposes of this opinion, we assume without deciding that CASA reports are analogous to investigator's reports. See G. L. c. 119, § 21. Cf. *Adoption of Sean*, 36 Mass. App. Ct. 261, 263 (1994).

(2) DSS "must show by more than a mere preponderance of evidence a compelling need for use of such a procedure."

(3) "[A]ny separate hearing regarding the reliability of a child witness's out-of-court statement must be on the record and a judge's basis for determining reliability must be supported by specific findings."

(4) "[T]here should be independently admitted evidence that corroborates the out-of-court statement."

Since the judge did not indicate on what evidence she relied in finding the father to have sexually abused Tina's sister, we cannot be confident that inadmissible evidence did not affect her decision. Some of the most egregious statements admitted were the therapist's quotes of some of the child's statements, reproduced in a CASA report dated May 21, 1997, in which the therapist was reported to relate that the child "said she had seen her father's penis and said 'It's red, long and hurts me.' "[12]

3. *Other issues.* Although it would have been preferable for the judge to have made an explicit finding of trauma to the eldest child prior to allowing her to testify in camera, in view of the indications of such trauma, see note 9, *supra*, the judge did not abuse her discretion in holding an in camera hearing. See *Adoption of Arthur*, 34 Mass. App. Ct. 914, 915 (1993); *White v. White*, 40 Mass. App. Ct. 132, 141 (1996). Nor did the judge abuse her discretion in not requiring an oath, where she determined that the child knew the importance of telling the truth. *Commonwealth* v. *McCaffrey*, 36 Mass. App. Ct. 583, 590 (1994).

The father's faulting of DSS for failing to attempt to unify the family is without merit in the circumstances of this case, and in any event, is not dispositive. "Under G. L. c. 210, § 3, it is the judge's task to determine [1] whether the parents are able to assume parental responsibility for their children, and [2] whether dispensing with parental consent to adoption served the best interests of the children." *Adoption of Kimberly*, 414 Mass. at 537 n.22, quoting from *Petition of the Dept. of Pub. Welfare to Dispense with Consent to Adoption*, 376 Mass. 252, 268-269 (1978).

---

[12]In addition to the hearsay statements of the child, the judge did not redact a statement of the therapist in the same CASA report that she was "absolutely confident that the sexual abuse had occurred and that [the father] had done it." Although the objection to the statement may have been improperly based on § 82, we note that the statement was clearly inadmissible. *Care & Protection of Rebecca*, 419 Mass. at 83.

The other contentions of the parents are either without merit, are unlikely to arise after remand and additional findings, or fall within our preceding discussion concerning hearsay.

4. *Remand.* It may be that with the passage of time the eldest child will no longer be traumatized by being a witness and cross-examined. While we hold that the in camera hearing was within the judge's discretion, if, on remand, such a hearing is again determined necessary because of possible trauma to the child, the judge should consider allowing counsel for the parents to be present and to cross-examine the child. If limitations on counsels' ability to do so are imposed again, the judge should determine whether such limitations deny the parents their right to "have the opportunity to rebut the evidence" against them, see *Adoption of Carla*, 416 Mass. at 514, and, if so, shall find the child "unavailable" under G. L. c. 233, § 82(*b*)(5). In the event that such a finding is made, and if the judge on remand admits substantively any of the eldest child's hearsay statements relating to sexual abuse, the procedures suggested in *Adoption of Quentin*, 424 Mass. at 424, should be followed.

The judge in her discretion may decide to hear evidence of the rape kit prior to holding any other hearings.

The decree is vacated and the case is remanded for further proceedings in light of this opinion and any changes in the situation of the parents since the last hearing.

*So ordered.*

APPENDIX.

General Laws c. 233, § 82, is as follows:

"(*a*) The out-of-court statements of a child under the age of ten describing any act of sexual contact performed on or with the child, the circumstances under which it occurred, or which identifies the perpetrator shall be admissible as substantive evidence in any civil proceeding, except proceedings brought under subparagraph C of section twenty-three or section twenty-four of chapter one hundred and nineteen; provided, however, that such statement is offered as evidence of a material fact and is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; the person to whom such statement was made or who heard the child make such statement testifies; the judge finds pursuant to subsection (*b*) that the child is unavailable as a witness; and the judge finds pursuant to subsection (*c*) that such statement is reliable.

"(*b*) The proponent of such statement shall demonstrate a diligent and

good faith effort to produce the child and shall bear the burden of showing unavailability. A finding of unavailability shall be supported by specific findings on the record, describing facts with particularity, demonstrating that:

> "(1) the child is unable to be present or to testify because of death or existing physical or mental illness or infirmity; or

> "(2) by a ruling of the court, the child is exempt on the ground of privilege from testifying concerning the subject matter of such statement; or

> "(3) the child testifies to a lack of memory of the subject matter of such statement; or

> "(4) the child is absent from the hearing and the proponent of such statement has been unable to procure the attendance of the child by process or by other reasonable means; or

> "(5) the court finds, based upon expert testimony from a treating psychiatrist, psychologist, or clinician, that testifying would be likely to cause severe psychological or emotional trauma to the child; or

> "(6) the child is not competent to testify.

"(c) If a finding of unavailability is made, the out-of-court statement shall be admitted if the judge further statement [sic] was made under oath, that it was accurately recorded and preserved, and there was sufficient opportunity to cross-examine; or (2) after holding a separate hearing and, where practicable and where not inconsistent with the best interests of the child, meeting with the child, that such statement was made under circumstances inherently demonstrating a special guarantee of reliability.

"For purposes of finding circumstances demonstrating reliability pursuant to clause (2) of subsection (c) a judge may consider whether the relator documented the child witness's statement, and shall consider the following factors:

> "(i) the clarity of the statement, meaning, the child's capacity to observe, remember, and give expression to that which such child has seen, heard, or experienced; provided, however, that a finding under this clause shall be supported by expert testimony from a treating psychiatrist, psychologist, or clinician;

> "(ii) the time, content and circumstances of the statement;

> "(iii) the existence of corroborative evidence of the substance of the statement regarding the abuse including either the act, the circumstances, or the identity of the perpetrator;

> "(iv) the child's sincerity and ability to appreciate the consequences of the statement.

"(*d*) An out-of-court statement admissible by common law or by statute shall remain admissible notwithstanding the provisions of this section."