## ADOPTION OF RONI
## (and a companion case[1]).

No. 01-P-1780.

Middlesex. June 3, 2002. - September 20, 2002.

Present: BROWN, COHEN, & GREEN, JJ.

*Due Process of Law,* Child custody proceeding. *Constitutional Law,* Confrontation of witnesses. *Practice, Civil,* Findings by judge. *Minor,* Care and protection, Custody, Adoption. *Parent and Child,* Care and protection of minor, Dispensing with parent's consent to adoption. *Evidence,* Child custody proceeding. *Adoption,* Dispensing with parent's consent, Visitation rights.

In a proceeding to dispense with parental consent to adoption, the judge did not abuse her discretion in excluding the parents from the courtroom during the children's testimony, where there was no showing of prejudice to the parents, and where, based on the opinions of the children's respective therapists, the judge determined that it would be traumatic if the parents were present during the children's testimony. [54-57]

There was no merit to the contention of a parent in a proceeding to dispense with parental consent to adoption that the parents were denied due process rights by the delay in conducting the so-called seventy-two hour hearing, as directed by G. L. c. 119, § 24, within the statutorily prescribed time, where there was no indication in the record that the parents challenged the schedule established for continuing the hearing, or that they sought relief under G. L. c. 211, § 3, and where, by virtue of the final determination of parental unfitness following a full trial, the question was largely moot. [57-58]

In a proceeding to dispense with parental consent to adoption, the judge's explicit ruling that she found the children's testimony "extremely credible" and her conclusion that the incidents of abuse they recounted warranted termination of parental rights were not clearly erroneous. [58]

There was no merit to the contention by parents in a proceeding to dispense with parental consent to adoption that the department furnished inadequate services in support of reunification before recommending the termination of their parental rights. [59]

PETITION filed in the juvenile session of the Woburn Division of the District Court Department on October 27, 1997.

The case was heard by *Gail Garinger,* J.

---

[1]Adoption of Gail. The names are pseudonyms.

*R. Scott Miller, Jr.*, for the father.

*Deborah Sirotkin Butler* for the mother.

*Richard S. Weitzel*, Assistant Attorney General, for Department of Social Services.

*Susan F. Drogin* for the children.

GREEN, J. The parents of two sisters appeal from a decision of the Juvenile Court, adjudicating the sisters in need of care and protection, committing the sisters to the permanent custody of the department of social services, and terminating the parents' rights to consent to adoption. The father claims that the parents were denied due process by the trial judge's order excluding them from the courtroom during their daughters' testimony.[2] The mother claims that the parents were denied due process by the court's failure to hold a so-called seventy-two hour hearing, as directed by G. L. c. 119, § 24, within the statutorily prescribed time.[3] Both parents challenge the findings of fact entered by the trial judge and complain that the department furnished inadequate services in support of reunification before recommending the termination of their parental rights. We affirm the decision.

*Background.* The trial judge entered detailed findings of fact in 215 separately enumerated paragraphs, which we summarize to provide background for the discussion that follows.

Roni was born in Taiwan on March 20, 1985. When Roni was between fifteen and seventeen months old, the mother (who was pregnant with Gail at the time) moved to the United States, leaving Roni in the care of the father's parents.[4] Gail was born in the United States on November 14, 1986, and was sent back

---

[2]The mother adopts the father's argument.

[3]We decline to consider the mother's additional claim that the single justice of this court erred in refusing the parents' joint motion for additional time to supplement the record with the transcript of a portion of the trial missing from the assembled record or, alternatively, to vacate the assembly of the record. Neither parent filed an appeal from the order of the single justice, as required by Appeals Court Rule 2:02 (1975), thereby failing a necessary predicate for review. In any event, we detect no abuse of discretion in the order of the single justice (who previously had allowed several motions to enlarge the appellants' time to supplement the record).

[4]The father did not reside with Roni or his parents during this period. He joined the mother in the United States several months after she emigrated, but did not bring Roni with him.

to live with Roni and the father's parents. The parents returned to Taiwan in 1989, where they rejoined their daughters. The family remained in Taiwan until 1992, when they moved to California. The family moved to Massachusetts in 1993.

The sisters suffered physical and emotional abuse by their parents. Among other incidents, the mother grabbed Roni's hair, struck her with bamboo shoots, a heavy cardboard tube, and a plastic baseball bat, hit her in the face, and regularly forced her to "squat" (with knees bent and arms in the air) for hours at a time as a form of discipline. The mother called Roni a "pig," told her she was invisible, and would speak to Roni only through Gail. The mother also abused Gail, though not as severely. While the mother was home, she would not permit the sisters to speak to one another, and would punish them (by requiring them to "squat") if they did. The father abused the children less frequently, because he was not home as often; he nonetheless found opportunities to beat the children with a wooden rod and a plastic bat, and he was aware of the mother's abuse.

In October of 1997, the department received a report of abuse following an incident in which the mother struck Roni out of dissatisfaction with the manner in which Roni carried out instructions to deliver bags of apples to various neighbors.[5] A social worker interviewed the sisters and the parents in the home, but the sisters denied abuse. After the social worker left the home, the father threw his food at Roni and told her that he could hit her as much as he wanted to; the mother forced Roni to "squat" and then pushed her out the door of the house. Roni ran from the house to a police station. A few days later, the department removed Roni from the custody of her parents and, subsequently, removed Gail from her parents and added her to the care and protection petition.

Both sisters were emotionally fragile when first placed in their present foster home, but have since flourished. The parents responded negligibly to the department's efforts to provide services to the family, and the department eventually shifted its goal for the children from reunification to adoption.

*Exclusion of parents from the courtroom.* At the commence-

___

[5]A mandated reporter submitted the report upon observing Roni with a bruise over her eye.

ment of trial, the judge addressed the children's motion (which the parents vigorously opposed) to testify out of the presence of their parents. The judge ruled that the children should testify in open court, but ordered the parents and the court-appointed interpreter[6] to remain out of the courtroom during the children's testimony. The parents' counsel was allowed to remain in the courtroom during the children's testimony and to cross-examine the children.[7] The father contends that this arrangement violated his due process rights "effectively to rebut adverse allegations concerning child-rearing capabilities." *Adoption of Mary*, 414 Mass. 705, 710 (1993).

In *Adoption of Don*, 435 Mass. 158, 167-169 (2001), the Supreme Judicial Court held that the constitutional right of confrontation under art. 12 of the Declaration of Rights of the Massachusetts Constitution does not apply to proceedings for the termination of parental rights.[8] At the same time, among other factors, the court specifically noted that due process was satisfied in that case "because the parents had the opportunity, through counsel, to cross-examine the child witnesses vigorously, in addition to presenting witnesses and other evidence on their own behalf." *Id.* at 169 n.16.

Similarly, we declined prior to *Adoption of Don* to disturb orders allowing a child's testimony to be given in camera, outside the presence of both the parents and their counsel, where there was evidence that testifying in the presence of the parents would cause trauma to the child. See *Adoption of Arthur*, 34 Mass. App. Ct. 914, 915 (1993); *Adoption of Tina*, 45 Mass. App. Ct. 727, 734 (1998). An order allowing a child to testify outside the presence of her parents to avoid trauma should ordinarily be supported by an explicit finding to that effect. See *ibid.* Here, there is a threshold difficulty in our evaluation of the judge's order in that the judge made no findings to support it and offered little explanation of any kind, saying only that "we

[6]The parents' native language is Mandarin Chinese. The father speaks little English; the mother speaks and understands English well. Both children are fluent in English.

[7]There was a break between the direct testimony and cross-examination of each child, during which the parents were able to confer with their counsel.

[8]The trial judge did not have the benefit of *Don*'s guidance at the time she ruled on the children's motion.

have made a minimal accommodation in view of the fact that this is a very serious proceeding with serious consequences, and I believe it's within the Court's discretion to structure it in this fashion. . . . [Roni is] fourteen and one-half years old [and Gail] . . . just turned thirteen, and the age of the girls factors into the Court's decision as to why they'll be testifying in the courtroom, not within the chambers."[9] Compounding matters is the fact that the judge appears to have conducted the bulk of her discussion of the motion with counsel in an untranscribed lobby conference. Despite the absence of an explicit finding of trauma in the present case, however, we believe it implicit in the judge's order that, based on the opinions of the children's respective therapists (on which the children's motion relied to support their request), she determined that it would be traumatic to the children if their parents were present in the courtroom during their testimony.

The father observes that the parents in the present case were excluded entirely from the courtroom, while the parents in *Adoption of Don, supra,* were allowed to remain in the courtroom and were merely prevented from sitting in a face-to-face confrontation with the children. By their exclusion from the courtroom, the father argues, the parents were unable to observe the children's demeanor and, accordingly, were unable to discern when the children's demeanor revealed their testimony to be lacking in credibility; that inability, in turn, prevented the parents from assisting their counsel in identifying areas to probe on cross-examination. Cf. *Commonwealth* v. *Johnson,* 417 Mass. 498, 503 (1994).[10]

However, the prejudice the father claims is largely illusory. The children's testimony regarding the parentally inflicted abuse necessarily implicated the parents' acts and, accordingly, ad-

[9]The judge explained her exclusion of the interpreter by saying that she believed it would be difficult for the interpreter to refrain from interjecting his independent recollection of the children's testimony during counsel's briefing of the parents on the substance of the children's testimony.

[10]Our courts have consistently declined to import the full panoply of criminal procedural rights into child custody cases. See *Adoption of Don, supra* at 169, and cases cited. Our reference to *Commonwealth* v. *Johnson* is for the sole purpose of describing the father's argument, which relies on it and other criminal cases.

dressed topics and incidents within the parents' direct knowledge; the parents did not need to observe the children's facial expressions in order to advise their counsel that an alleged incident of abuse did not occur. The specific instances of alleged abuse to which the children testified had appeared previously in the reports of the court investigator and the children's therapists, providing the parents with ample opportunity prior to trial (in addition to their opportunity during trial to consult with their counsel immediately following the children's testimony, see note 7 *supra*) to advise their counsel of any incidents they claimed did not occur.

Though *Adoption of Don* confirmed that there is no art. 12 right of confrontation in child custody cases, it noted "the natural right that parents have to the custody of their children, a right that is fundamental and constitutionally protected." *Id.* at 168. Given the important interests at stake in child custody cases, and the need to preserve public confidence in the integrity and fairness of the proceedings, we observe that the judge's handling of the children's motion left much to be desired. It would be far preferable for any order limiting parties' access to, or participation in, any portion of the proceedings to be narrowly tailored to the particular protection required in the circumstances, explained by the judge and supported by explicit findings. Every effort should be made to safeguard the children's well-being, but with the least intrusion on the parents' opportunities for full participation practicable in the circumstances, and only where absolutely necessary should parents be excluded entirely from the courtroom.[11] Nonetheless, absent a showing of prejudice in the present case, and in light of the therapists' beliefs that testifying in the presence of their parents would be traumatic to the children, we conclude that the judge did not abuse her discretion in excluding the parents from the courtroom during the children's testimony.

*Delay in holding the seventy-two hour hearing.* There is little to the mother's argument that the parents were denied due process rights by the delay in conducting the seventy-two hour

[11]In opposing the children's motion, the parents offered no less intrusive alternatives to their exclusion (choosing instead to rely on their incorrect assertion of confrontation rights under art. 12).

hearing within the time prescribed by G. L. c. 119, § 24. To begin with, the mother overstates her complaint that, following removal of the children on October 31, 1997, the seventy-two hour hearing did not "conclude" until February 9, 1998. In fact, the hearing commenced on November 3, 1997 (at which the parties agreed to waive the seventy-two hour requirement because of the need to arrange for a Mandarin interpreter, see note 6 *supra*). Testimony commenced one week later, on November 10, 1997. While the hearing then continued over a number of nonconsecutive days, eventually reaching conclusion on February 9, there is no indication in the record that the parents challenged the schedule established for continuing the hearing, or that they sought relief under G. L. c. 211, § 3. In any event, by virtue of the final determination of parental unfitness following a full trial, the question is largely moot. See *Care and Protection of Robert*, 408 Mass. 52, 68 n.8 (1990).

*Sufficiency of the evidence.* The parents devote significant portions of their argument to an assault on the children's credibility and on a number of the judge's subsidiary findings of fact in reliance thereon. It is probably sufficient to observe in response that our role on review of a trial judge's findings is extremely limited; we do not "assess the evidence de novo, but rather . . . determine whether the judge's findings were clearly erroneous and whether they proved parental unfitness by clear and convincing evidence." *Custody of Eleanor*, 414 Mass. 795, 802 (1993). Our posture toward the trial judge's findings and rulings in child custody cases is one of "substantial deference." *Adoption of Hugo*, 428 Mass. 219, 225 (1998). The trial judge ruled explicitly that she found the children's testimony "extremely credible" and concluded that the incidents of abuse they recounted warranted termination of parental rights. Our review of the record does not suggest that the judge's findings were clearly erroneous. Those findings, in turn, amply support the decision to terminate parental rights. See *Adoption of Don*, *supra* at 167. Moreover, even if we were to accept the parents' claims that the children fabricated or exaggerated certain of the alleged incidents of abuse, we note that the parents do not challenge, and even concede, that some incidents occurred substantially as found by the judge.

*Failure to provide services.* Both parents claim that the department failed to provide adequate service in support of the goal of reunification, as directed by G. L. c. 119, § 1. See *Care and Protection of Elaine,* 54 Mass. App. Ct. 266, 273-274 (2002). Specifically, the parents contend that, following removal of the children from their custody, the department provided them inadequate opportunities for visitation and that, as a result, the children became enamored of their new foster home. However, the limited visitation was indicated by the children's therapists, who cited apprehension on the children's part toward visitation. Moreover, during the second of the two visits that did occur, the father became angry and began to yell at Gail because she refused to sit next to him; both parents then abruptly left the department's offices. Review of the record reveals that the parents failed to attend scheduled meetings with the department and exhibited a general lack of cooperation with the department.[12] As the trial judge concluded, while there was likely more the department could have done, what the parents cite as a lack of service on the part of the department principally illustrated the parents' refusal to accept responsibility for the condition of their family or to acknowledge the severity of their abusive behavior.[13]

*Decrees affirmed.*

---

[12]The parents failed to complete service plan tasks, failed to undergo psychological evaluation, and failed to respond to letters sent by the assigned social worker seeking to schedule monthly meetings.

[13]We have considered carefully the parents' claim that the department displayed cultural bias in its treatment of them and that the bias fueled the department's recommendation of adoption rather than reunification. We agree with the trial judge, whose findings show thoughtful consideration of that claim, and who observed that there was no evidence that the nature and scope of the abuse inflicted on the children was common or considered appropriate in Taiwan, and that the only evidence was to the contrary. The parents' insistence that they are victims of cultural bias, and that their daughters have fabricated allegations of abuse in order to pursue a more affluent lifestyle than the parents can provide, instead stands as further evidence of their unwillingness to acknowledge the severity of the abuse they inflicted on their daughters.