The mother appeals the termination of her parental rights with respect to the child.[3] We affirm.
Background. The child was born in 2006. In January, 2015, the Department of Children and Families (department) assumed emergency custody of the child and filed a petition alleging that the child was in need of care and protection. In September, 2015, the mother entered into a written stipulation waiving her rights to a hearing on the merits of the petition. A Juvenile Court judge approved the stipulation, found the mother unfit, and committed the child to the custody of the department. In October, 2015, the department filed a notice of intent to seek termination of parental rights and to dispense with the need for parental consent for adoption. A second Juvenile Court judge, after a trial, terminated the mother's parental rights, and approved the department's adoption plan for the child. The child did not return to the mother's care at any point following her removal. The child has lived in a preadoptive home since January, 2017.
Discussion. The mother argues that the judge erroneously terminated the mother's parental rights because the child wished to be adopted, and contends that there was insufficient evidence to conclude that the mother was unfit. We disagree.
A. Child's testimony. As an initial matter, the mother argues that the judge impermissibly allowed the child to testify in camera,[4] and that the judge gave undue weight to the child's testimony. The child testified in the absence of the mother, mother's counsel, the pro se father, child's counsel, and counsel for the department.
"Because of the delicacy of cases involving interests of children which may be adverse to that of their parents, a trial judge is not restricted to the ordinary modes of trial, but may direct that the children be brought before [the judge], and may examine them privately. ..." Adoption of Arthur, 34 Mass. App. Ct. 914, 915 (1993) (quotation omitted). Assuming without deciding that this issue was properly preserved, the judge did not abuse her discretion in allowing the child to testify with accommodations. While it is "far preferable" for a judge to make explicit findings regarding the need for accommodations,[5] given the child's history, it was implicit that the judge determined that the child would suffer trauma if she testified with the parties and counsel present. Adoption of Roni, 56 Mass. App. Ct. 52, 56-57 (2002). Prior to the child testifying, there was evidence of the child's history of trauma and the clinical support that she received, including that she received a trauma assessment over the course of several weeks and that the child and social worker developed a code system at the child's request to communicate the child's discomfort, if any, during visits with the mother.[6]
Additionally, the structure of the child's testimony was permissible. Before the child testified, the mother was given the opportunity to propose questions for the judge to ask of the child. The child testified for approximately twenty minutes. After the child testified, the judge provided an audio recording of the child's testimony to the parties.[7] The record does not indicate that the mother requested a further opportunity to propose additional questions for the child in light of the child's testimony. The in camera testimony did not impede the mother's opportunity to "effectively ... rebut adverse allegations concerning child-rearing capabilities." Adoption of Roni, 56 Mass. App. Ct. at 55, quoting from Adoption of Mary, 414 Mass. 705, 710 (1993). Further, the mother has shown no prejudice from the manner in which the child testified or the substance of the child's testimony. The judge's conclusions of law indicate that the judge considered the child's testimony in context of the other evidence presented at trial. While the child's opinion was not determinative, it was within the judge's discretion to consider the child's desire to be adopted. Adoption of Arthur, 34 Mass. App. Ct. at 915.
B. Unfitness. A judge must find, by clear and convincing evidence, that the parent is currently unfit to care for the child and that termination is in the child's best interests. See Adoption of Nancy, 443 Mass. 512, 514 (2005). "Generally, no one factor is determinative and the judge should weigh all the evidence" (footnote omitted). Petitions of the Dept. of Social Servs. to Dispense with Consent to Adoption, 399 Mass. 279, 290 (1987). "We give substantial deference to [the] judge's decision ... and reverse only where the findings of fact are clearly erroneous or where there is a clear error of law or abuse of discretion." Adoption of Ilona, 459 Mass. 53, 59 (2011).
The mother cared for the child during the first eight years of the child's life until the child was removed from the mother's care following an incident in a hospital waiting room where the child was reportedly left unattended. The department took emergency custody of the child because of the mother's aggressive behavior when confronted by hospital and department staff and because the mother was unable to make decisions regarding the child's care given the mother's intoxication. Following the child's removal, the mother demonstrated instability in several areas of her life and there was clear and convincing evidence of the mother's unfitness at the time of trial.[8]
The mother's lack of stable employment and housing both factored into the judge's determination of her unfitness. The mother lacked a stable source of income to care for the child, having worked "[i]n the past year [before 2017] ... approximately fifteen days in total." She testified that she intended to apply for temporary disability from Social Security based on an injury sustained in 2015, but had not yet filed a claim. The mother also failed to maintain stable housing and moved between living with relatives, friends, and a "sober house," and reported that for a period that she was living on beaches and in parks. The mother testified that, moving forward, she intended to live with friends or seek shelter at a women's shelter. The judge permissibly considered these patterns of instability as factors that would negatively impact the child. See Care & Protection of Lillith, 61 Mass. App. Ct. 132, 136 (2004).
The mother also struggled with her mental health and substance use. During the pendency of the department's involvement with the child, the mother demonstrated aggressive behaviors, including outbursts directed at or in front of the child that led to the suspension of visits. Although the mother engaged in some therapy and was scheduled for an anger management and impulse control evaluation, there was no further information conveyed to the judge regarding her completion of this evaluation or her efforts to remedy these shortcomings. Similarly, in February, 2016, the mother discontinued substance use treatment despite referrals from the department and knowledge that treatment was required in the service plan. Later that year, the mother was "sectioned" for nineteen days following an altercation with the maternal grandmother, who then sought to have the mother committed for involuntary drug treatment. To the extent that the mother engaged in services to address these issues, she did not benefit from them. In light of the child's significant emotional and behavioral special needs, the patterns of behaviors support the conclusion that the mother was unfit and that her unfitness was likely to continue into the future. See Adoption of Ilona, 459 Mass. at 60 ("Because childhood is fleeting, a parent's unfitness is not temporary if it is reasonably likely to continue for a prolonged or indeterminate period").
Lastly, while the mother argues that the judge failed to adequately consider the testimony of certain witnesses, we defer to the judge's credibility assessments and the weight that she placed on the evidence. See Adoption of Quentin, 424 Mass. 882, 886 n.3 (1997).[9]
Decree affirmed.

The father's rights were also terminated, and the maternal grandmother's petition for permanent guardianship was denied. Neither the father nor the maternal grandmother are parties to this appeal.

The department filed a short order motion during trial asking that the child be allowed to testify and that several accommodations be made for the child, including that the child testify in the afternoon, be allowed to enter the court house through a side door, and not pass through security. The department also requested that the child not testify in the presence of the parties and counsel, and that counsel submit questions in advance to be asked directly by the judge.

The child's counsel objected to the child testifying, arguing that testifying would be traumatic for the child. The judge stated that accommodations would be made "[s]o that there is no, we will minimize any trauma to this child." The judge allowed the child to testify as "there's been no evidence shown that there is, that this is a definitive trauma to the child." In context, we understand the judge to mean that there is no evidence that testifying itself would be traumatic to the child, and not that there was no evidence of trauma requiring accommodations.

After the judge approved the accommodations, but before the child testified, the clinical social worker who conducted the trauma assessment testified. She testified that she evaluated the child from September, 2015, to January, 2016. The social worker opined that the child "suffered from trauma based on her recall of experiences and her perception of the impact it had on her on those experiences," and she initially suggested that the mother and child engage in repair work. The clinical social worker concluded that the child had posttraumatic stress disorder, anxiety, and issues with attachment regulation and competency. The child's pediatric neuropsychologist diagnosed the child with attention deficit disorder, posttraumatic stress disorder, and anxiety.

The judge allowed counsel the opportunity to listen to the child's testimony immediately after the child testified. However, the quality of the recording was poor and so the judge resumed trial and made arrangements for the parties to receive copies of the audio. The trial transcript does not indicate how much, if any, of the recording counsel listened to before trial resumed. The mother's counsel did not object to resuming trial before the parties could listen to the audio. Later, the mother's counsel also did not object to proceeding with closing arguments even though the mother had not yet finished listening to the entire recording. The mother's counsel did not indicate that counsel herself did not listen to the audio, and mother's counsel referenced the child's testimony in her closing argument.

We pause to note that the mother has shown affection for the child, and none of the judge's findings negate this. Despite the moral overtones of the statutory term "unfit," the judge's decision was not a moral judgment or a determination that the mother does not love the child. The inquiry instead was whether the parent's deficiencies or limitations "place the child at serious risk of peril from abuse, neglect, or other activity harmful to the child." Care & Protection of Bruce, 44 Mass. App. Ct. 758, 761 (1998).

To the extent that we do not address the mother's other contentions, they "have not been overlooked. We find nothing in them that requires discussion." Commonwealth v. Domanski, 332 Mass. 66, 78 (1954).