NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-1439

ADOPTION OF OBA (and two companion cases[1]).

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Following a trial, a Juvenile Court judge found in 2024 that the father was unfit to parent three of his children and terminated his parental rights as to them.  On appeal, the father contends that (1) there was not clear and convincing evidence of unfitness because there was not sufficient cause to remove the children from his care three years earlier, and (2) the Department of Children and Families (DCF) failed to make reasonable efforts to reunify the family.  We affirm.

Background.  We set forth the facts found by the judge, reserving some details for later discussion.

---

[1] Adoption of Kendrick and Adoption of Keisha.  The children's names are pseudonyms.  A fourth child was dismissed from the petition upon turning eighteen, and a fifth child named in the petition became the subject of a guardianship.

The father has three children with the mother, and they are the subject of this appeal.[2]  The children were four, seven, and thirteen years old at the time of trial.[3]  The father and the mother have been in an "on and off" relationship for eleven years.  The father is unemployed, and his only income consists of supplemental security income (SSI).  He has been diagnosed with paranoid schizophrenia, attention deficit hyperactivity disorder, and manic depression, suffers from panic attacks, and also claims to have chronic amnesia.  He does not consistently take his psychiatric medications, but uses substances such as marijuana and alcohol to manage stress.  He stopped attending therapy in September 2022.  He has an extensive criminal history, including a conviction for assault and battery on a pregnant victim, the mother.  The father has also been subject to two abuse prevention orders sought by the mother pursuant to G. L. c. 209A.  While the police have responded to multiple reports of domestic disturbances between the mother and the father, one of which resulted in the father's criminal prosecution and incarceration, he denies the existence of domestic violence issues.

---

[2] At the start of trial, the mother stipulated to her current unfitness and agreed to the permanent custody of the children to DCF.  The mother has not appealed.

[3] The children do not appeal from the decrees.  In a brief, they assert that all three are currently in stable environments that offer stability and therapeutic support.

The father and the mother have been the subject of numerous reports under G. L. c. 119, § 51A (51A reports) and investigations pursuant to G. L. c. 119, § 51B, involving allegations of neglect and abuse of the children. On September 1, 2021, DCF filed a care and protection petition and was awarded temporary custody of the three children. The father's termination of parental rights trial occurred over several days from July 2023 to February 2024, and on April 5, 2024, the judge entered decrees terminating the father's parental rights, and committing custody of the three children to DCF. In August 2024, the judge issued findings of fact and conclusions of law in support of the decision to terminate the father's parental rights.

The judge concluded that State intervention was justified due to the father's long history of domestic violence, housing instability, untreated mental health issues, and lengthy criminal history. The judge further concluded that DCF met its obligation to make reasonable efforts to restore the children to the father's care, but the father has "grievous shortcomings" that would place the children's welfare at risk were that to happen. The father has refused to acknowledge how his behavior resulted in the removal of the children, has not made efforts to meaningfully engage in DCF's services, and will not engage in services to address his parenting deficits, mental health

3

issues, or perpetration of domestic violence. The father has inconsistently attended DCF meetings, has not completed an intimate partner violence program, has stopped attending counseling, did not engage in any parenting support, and gained no appreciable benefit from the parenting class he did complete. The father lacks stable long-term housing, continues to display a violent and aggressive nature, does not believe that he has any parenting deficiencies, and does not believe he needs services for his mental health issues. The father also lacks an understanding or willingness to meet the substantial needs of his children.

Discussion. 1. Standard of review. "In deciding whether to terminate a parent's rights, a judge must determine whether there is clear and convincing evidence that the parent is unfit," and, if so, "whether the child's best interests will be served by terminating the legal relation between parent and child." Adoption of Patty, 489 Mass. 630, 637 (2022), quoting Adoption of Ilona, 459 Mass. 53, 59 (2011); Adoption of Arianne, 104 Mass. App. Ct. 716, 720 (2024). "A finding of unfitness must be supported by clear and convincing evidence, based on subsidiary findings proved by at least a fair preponderance of evidence." Adoption of Patty, supra. "Parental unfitness must be determined by taking into consideration a parent's character, temperament, conduct, and capacity to provide for the child in

4

the same context with the child's particular needs, affections, and age." Adoption of Mary, 414 Mass. 705, 711 (1993). "We give substantial deference to a judge's decision that termination of a parent's rights is in the best interest of the child, and reverse only where the findings of fact are clearly erroneous or where there is a clear error of law or abuse of discretion." Adoption of Ilona, supra.

2. Removal of the children from the father's care. The father does not contest any of the judge's findings of fact. Instead, he argues that there was no clear and convincing evidence that he was unfit because there was not sufficient cause to remove the children from his care on September 1, 2021. The essence of DCF's case is that the father failed to acknowledge much less fully remedy his parenting deficits after that time.

The issue of removal is "largely moot" by virtue of "the final determination of parental unfitness following a full trial." Adoption of Roni, 56 Mass. App. Ct. 52, 58 (2002). But even if we were to consider the issue, we would conclude that there was ample evidence supporting the judge's determination that, at the relevant time, the children were suffering from or were in immediate danger of serious abuse or neglect. See G. L. c. 119, § 24; Care & Protection of Rashida, 488 Mass. 217, 219 (2021), S.C. 489 Mass. 128 (2022). Prior to the removal, the

5

father had engaged in multiple incidents of serious abuse and neglect while the children were in his care. For example, DCF substantiated allegations that, in 2013, the father physically abused Oba's two older siblings[4] and neglected all three. In 2016, the father grabbed the pregnant mother by the neck, held her against the wall, and dropped her when a neighbor walked in. As a result, the father was criminally prosecuted and imprisoned, and DCF substantiated allegations of neglect of Oba and her two older siblings after she and the mother recounted the assault to a social worker. In 2020, DCF substantiated allegations of neglect of Oba, Kendrick, and Keisha after the father engaged in physical violence against the mother, verbally abused two of the children, and punished one of them for reporting the abuse. In August 2021, Oba and an older sibling reported that the father had punched the mother in the face that summer. That same month, a police officer and DCF social workers responded to an emergency at the home where, according to the officer, the father said that he was moving Oba, then ten years old, to Connecticut because he did not want anything to do with her. While the father denied the police officer's report at trial, the judge did not credit his testimony. These and other undisputed facts in the record were sufficient to show

---

[4] Kendrick and Keisha are younger than Oba. They were not yet born at the time of these events.

that the children were suffering from or in immediate danger of serious abuse or neglect.

Likewise, the father's failure to acknowledge and address his parenting deficits, along with the judge's other findings of fact, demonstrated by clear and convincing evidence the father's current unfitness to assume parental responsibility for the children and that that unfitness is likely to continue indefinitely into the future. We also see no abuse of discretion or other error of law in the judge's conclusion that termination of parental rights was in the children's best interests.

3. Reasonable efforts. "The department is 'required to make reasonable efforts to strengthen and encourage the integrity of the family before proceeding with an action designed to sever family ties.'" Adoption of West, 97 Mass. App. Ct. 238, 241 (2020), quoting Adoption of Lenore, 55 Mass. App. Ct. 275, 278 (2002). See G. L. c. 119, § 29C; Care & Protection of Rashida, 488 Mass. at 218. "A judge's determination that the department made reasonable efforts will not be reversed unless clearly erroneous." Adoption of West, supra at 242.

Here, the record amply supports the judge's conclusion that DCF made reasonable efforts to reunite the father and the children and that the father refused to participate adequately

7

in those efforts. DCF offered a range of services to the father that were "intended to address the deficits that brought [him] to the attention of [DCF] ultimately resulting in removal of the children, namely domestic violence and mental health issues." These efforts were contingent upon the father's "own obligation to fulfill various parental responsibilities, including seeking and utilizing appropriate services" (citation omitted). Adoption of Eduardo, 57 Mass. App. Ct. 278, 281 (2003). By the time of trial, the father had missed eleven monthly meetings with DCF. He did not engage with the parenting support offered to him and reported that he does not need help with his parenting. The father stopped attending counseling in September 2022 and did not undergo the neuropsychological exam required by DCF's second action plan for the family, in effect from April to October 2022. Even though he initially attended some classes in an intimate partner violence program, he failed to complete the program after he told his social worker that he no longer needed it.[5] Contrary to the evidence in the case, the father has

_____

[5] Although the father did report to his social worker that he was unable to keep up with the payments for the classes, he did not request financial assistance from DCF, but rather reported that he had terminated the service because "he no longer needed any services."

maintained that he has never engaged in domestic violence and that the issue has not affected his children.[6]

The father contends that DCF failed in its obligation to strengthen and encourage family bonds by reducing his visiting time with the three children:  first, from weekly to biweekly visits (while doubling the duration of each visit); then, in January 2024, to monthly visits after the father engaged in aggressive and improper behavior at one child's treatment residence.  The father, however, did not object to either change in his visitation schedule before final judgment.  While "[b]iological parents are entitled to visitation with their child so long as the visits are not harmful to 'the welfare of the child and the public interest,'" Adoption of Rhona, 57 Mass. App. Ct. 479, 488 (2003), quoting G. L. c. 119, § 35, DCF retains authority to control the visits of the children within its custody.  See G. L. c. 119, § 21 (defining "custody" as "the power to:  (1) determine a child's place of abode, medical care and education; (2) control visits to the child; and (3) consent to enlistments, marriages, and other contracts otherwise

_____

[6] We are not persuaded by the father's argument that DCF's delay in updating the first action plan drafted for the family, in effect from July 2021 to January 2022, until April 2022 amounted to a failure to make reasonable efforts.  The father knew by at least February 2022 that DCF expected him to address its concerns about domestic violence in his relationship with the mother, and, as discussed, the father failed to perform many of the tasks outlined in the actions plans between April 2022 and May 2024.

requiring parental consent").  "'[D]ecisions related to normal incidents of custody' generally are committed to the discretion of the department, reviewable only for abuse of discretion." Care & Protection of Walt, 478 Mass. 212, 230 (2017), quoting Commonwealth v. Adkinson, 442 Mass. 410, 418 (2004).  Given the father's history of aggressive behavior, failure to attend scheduled visits with his children, and failure to challenge either reduction in visitation frequency, it was not an abuse of discretion for the judge not to sua sponte override DCF's visitation schedule.

For similar reasons, we are unpersuaded by the father's claim that DCF improperly disregarded his cultural background by reducing his visiting time in response to a July 2022 incident in which the father allegedly picked up Kendrick and yelled in his face.  Following an investigation, DCF did not find that this allegation of physical abuse was supported, and there is no evidence that DCF reduced the father's visiting time in response to it or any other alleged act of physical discipline.  While the judge's finding of unfitness does take into consideration his aggressive and volatile behavior toward the children, the conclusion focused on the father's history of domestic violence, refusal to obtain treatment for his mental health issues, and

failure to make efforts to improve his parenting.

Conclusion.  We conclude that the judge had before him ample, clear and convincing evidence on which to base his finding that the father was unfit to parent the children, that his unfitness as a parent was likely to continue indefinitely into the future, and that termination of his parental rights was in the children's best interests.

Decrees affirmed.

By the Court (Rubin,
   D'Angelo, & Toone, JJ.[7]),

Clerk

Entered:  September 30, 2025.

---

[7] The panelists are listed in order of seniority.